# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ANTHONY FERRARE, on behalf of himself and all others similarly situated, | : |
| Plaintiff, | : |
| v. | : |
| IDT ENERGY, INC. | : |
| Defendant. | : |

Civil Action No.: 2:14-cv-04658-AB

Class Action

## ORDER

**AND NOW**, this _____ day of _____, 2014, upon consideration of Defendant IDT Energy, Inc.'s ("IDT") Motion to Stay or, Alternatively, Dismiss, and any opposition thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED** and this Action is hereby **STAYED** until such time as the Pennsylvania Public Utility Commission ("PUC") has made a final determination in the matter of *Commonwealth of Pennsylvania, by Attorney General Kathleen Kane, Through the Bureau of Consumer Protection and Tanya J. McCloskey, Acting Consumer Advocate v. IDT Energy, Inc.*, PA PUC Docket No. C-2014-2427657, as to whether IDT violated the PUC's regulations regarding sales and marketing practices governing electric generation suppliers.

BY THE COURT:

_____ J.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY FERRARE, on behalf of himself and all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 2:14-cv-04658-AB |
| | : | |
| | : | Class Action |
| v. | : | |
| | : | |
| IDT ENERGY, INC. | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT IDT ENERGY, INC.'S
## MOTION TO STAY OR, ALTERNATIVELY, DISMISS

Pursuant to the doctrine of primary jurisdiction and Federal Rule of Civil Procedure 12(b)(6), Defendant IDT Energy, Inc. ("IDT"), by and through its undersigned attorneys, hereby moves for entry of an order staying this Action until such time as the Pennsylvania Public Utility Commission ("PUC") has made a final determination in the matter of *Commonwealth of Pennsylvania, by Attorney General Kathleen Kane, Through the Bureau of Consumer Protection and Tanya J. McCloskey, Acting Consumer Advocate v. IDT Energy, Inc.*, PA PUC Docket No. C-2014-2427657, as to whether IDT violated the PUC's regulations regarding sales and marketing practices governing electric generation suppliers. Alternatively, IDT moves for entry of an order dismissing Plaintiff's Complaint for failure to state a claim upon which relief may be granted. The grounds for this Motion are stated more fully in the accompanying Memorandum of Law, and the exhibit thereto, which are incorporated by reference as if set forth in full herein.

Dated: September 4, 2014

Respectfully submitted,

*/s/ Marc A. Goldich*
Marc A. Goldich (SBN 93055)
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: +1 215 851 8100
Fax: +1 215 851 1420
mgoldich@reedsmith.com

Thomas L. Allen (SBN 33243) *(to be admitted pro hac vice)*
Justin J. Kontul (SBN 206026) *(to be admitted pro hac vice)*
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: +1 412 288 3066
Fax: +1 412 288 3063
tallen@reedsmith.com
jkontul@reedsmith.com

*Counsel for Defendant IDT Energy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served a true and correct copy of the foregoing

Defendant IDT Energy, Inc.'s Motion to Stay or, Alternatively, Dismiss and all accompanying

papers on September 4, 2014 via CM/ECF upon the following counsel of record:

Troy M. Frederick, Esq.
Marcus & Mack, P.C.
57 South Sixth Street
Indiana, PA 15701

Jonathan Shub, Esq.
Seeger Weiss LLP
1515 Market St, Suite 1380
Philadelphia, PA 19102

REED SMITH LLP

By: */s/ Marc A. Goldich*_____
      Marc A. Goldich

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY FERRARE, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>IDT ENERGY, INC.<br><br>               Defendant. | Civil Action No.: 2:14-cv-04658-AB<br><br>Class Action |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO STAY OR, ALTERNATIVELY, DISMISS

Marc A. Goldich (SBN 93055)
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: +1 215 851 8100
Fax: +1 215 851 1420
mgoldich@reedsmith.com

Thomas L. Allen (SBN 33243) *(to be admitted pro hac vice)*
Justin J. Kontul (SBN 206026) *(to be admitted pro hac vice)*
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: +1 412 288 3066
Fax: +1 412 288 3063
tallen@reedsmith.com
jkontul@reedsmith.com

*Counsel for Defendant
IDT Energy, Inc.*

## TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ...........................................................................1

II.    FACTUAL BACKGROUND ...............................................................................3

III.   LEGAL STANDARD ..........................................................................................5

IV.    ARGUMENT .......................................................................................................5

        A.    This Matter Should Be Stayed Because Primary Jurisdiction Over
              Plaintiff's Claims Lies With The PUC. ..................................................5

        B.    Each Count of Plaintiff's Complaint Should Be Dismissed For
              Independent Compelling Reasons..........................................................10

              1.    Plaintiff's UTPCPL Claim Should Be Dismissed For Failure To
                    State A Claim...............................................................................10

                    a.    Plaintiff's UTPCPL Claim Is Barred Under The Economic Loss
                          Doctrine................................................................................ 11

                    b.    Given The Written Disclosures In The Terms of Service, Plaintiff
                          Cannot Demonstrate Justifiable Reliance. ..................................... 12

              2.    Plaintiff's Claims For Breach of Contract (Count III) And Breach
                    Of The Covenant Of Good Faith And Fair Dealing (Count II)
                    Should Be Dismissed Because Plaintiff Does Not Identify Any
                    Specific Provision Of The Parties' Agreement Breached By IDT
                    And An Express Provision Of The Terms Of Service Governs
                    Pricing.........................................................................................14

              3.    Plaintiff's Claim For Unjust Enrichment Fails As A Matter of Law
                    Because The Parties' Relationship Arises From A "Valid
                    Contract."....................................................................................17

V.     CONCLUSION...................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................... 5

*Associated Tel. Answering Exchanges, Inc. v. AT&T Co.,*
    492 F. Supp. 921 (E.D. Pa. 1980) ....................................................................... 6, 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................... 5

*Boyden v. Township of Upper Darby,*
    --- F. Supp. 2d ---, 2014 WL 1152149 (E.D. Pa. 2014) ........................................ 4

*CoreStates Bank, N.A. v. Cutillo,*
    723 A.2d 1053 (Pa. Super. Ct. 1999) .................................................................. 15

*County of Erie v. Verizon North, Inc.,*
    879 A.2d 357 (Pa. Commw. Ct. 2005) ............................................................... 7, 8

*Daniel B. Van Campen Corp. v. Building & Constr. Trades Council,*
    195 A.2d 134 (Pa. Super Ct. 1963) .................................................................... 16

*DeFebo v. Andersen Windows, Inc.,*
    654 F. Supp. 2d 285 (E.D. Pa. 2009) .................................................................. 11

*DiSanto v. Dauphin Consolidated Water Supply Co.,*
    436 A.2d 197 (Pa. Super. Ct. 1981) ..................................................................... 9

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
    66 F.3d 604 (3d Cir. 1995) ................................................................................. 11

*Elkin v. Bell Tel. Co. of Pennsylvania,*
    420 A.2d 371 (Pa. 1980) ....................................................................................... 6

*Faistl v. Energy Plus Holdings, LLC,*
    No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012) ................................. 13, 14

*Ferki v. Wells Fargo Bank,*
    No. 10-2756, 2010 WL 5174406 (E.D. Pa. Dec. 20, 2010) ................................. 11

*Friscarella v. Midland Mortg. Co., No. 10-1647,*
    No. 10, 1647, 2011 U.S. Dist. Lexis 53176 (W.D. Pa. May 18, 2011) .................... 11

*Gadley v. Ellis,*
    No. 3:13-cv-17-KRG, 2014 WL 3696209 (W.D. Pa. July 23, 2014) ...................... 11

*Hunt v. U.S. Tobacco Co.,*
    538 F.3d 217 (3d Cir. 2008) ............................................................................. 12, 13

*Hutchison v. Sunbeam Coal Corp.,*
    519 A.2d 385 (Pa. 1986) ..................................................................................... 16

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*,
   71 F.3d 1086 (3d Cir. 1995) ................................................................. 6

*Mitchell v. Moore*,
   729 A.2d 1200 (Pa. Super. Ct. 1999) .................................................... 17

*Montanez v. HSBC Mortg. Corp. (USA)*,
   876 F. Supp. 2d 504 (E.D. Pa. 2012) ............................................... 11, 17

*Morrow v. Bell Tel. Co. of Pa.*,
   479 A.2d 548 (Pa. Super. Ct. 1984) ...................................................... 8

*Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ............................................................ 4, 16

*Pettko v. Pa. Am. Water Co.*,
   39 A.3d 473 (Pa. Commw. Ct. 2012) ............................................... 7, 8, 9

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Trans-Atlantic*,
   400 U.S. 62 (1970) ................................................................................. 5

*Rahemtulla v. Hassam*,
   539 F. Supp. 2d 755 (M.D. Pa. 2008) ................................................... 17

*Reading Terminal Merchants Ass'n v. Samuel Rappaport Assocs.*,
   456 A.2d 552 (Pa. 1983) ...................................................................... 16

*Schwartz v. Rockey*,
   932 A.2d 885 (Pa. 2007) ...................................................................... 12

*Sheinman Provisions, Inc. v. Nat'l Deli LLC*,
   No. 08-453, 2008 WL 2758029 (E.D. Pa. July 15, 2008) ...................... 15

*Slack v. Suburban Propane*,
   No. 10-2548, 2010 WL 3810870 (D.N.J. Sept. 21, 2010) ...................... 14

*Smith v. Allstate Corp.*,
   Nos. 12-144, 12-0145, 2012 WL 2849258 (E.D. Pa. July 11, 2012) ...... 17

*T.W. Phillips Gas & Oil Co. v. Peoples Nat. Gas Co.*,
   492 A.2d 776 (Pa. Commw. Ct. 1985) .................................................... 7

*Tlush v. Manufacturers Res. Ctr.*,
   315 F. Supp. 2d 650 (E.D. Pa. 2002) ...................................................... 4

*United States v. Phila. Nat'l Bank*,
   374 U.S. 321 (1963) ............................................................................... 6

*USX Corp. v. Prime Leasing Inc.*,
   988 F.2d 433 (3d Cir. 1993) ......................................................... 15, 16, 17

*Ware v. Rodale Press, Inc.*,
   322 F.3d 218 (3d Cir. 2003) ................................................................ 14

*Weinberg v. Sun Co.*,
   777 A.2d 442 (Pa. 2001) ...................................................................... 12

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002) ........................................................................ 11, 12

*Weston v. Reading Co.*,
  282 A.2d 714 (Pa. 1971) ................................................................................ 5, 6

*Wilson Area Sch. Dist. v. Skepton*,
  895 A.2d 1250 (Pa. 2006) .................................................................................. 17

*Wulf v. Bank of America, N.A.*,
  798 F. Supp. 2d 586 (E.D. Pa. 2011) .......................................................... 11, 12

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
  854 A.2d 425 (Pa. 2004) .................................................................................... 12

## STATUTES

28 U.S.C. § 1453 ...................................................................................................... 5

28 U.S.C. §§ 1332 and 1441 .................................................................................... 5

66 Pa.C.S. § 2809 ..................................................................................................... 1

66 Pa.C.S. § 2809(e) ................................................................................................ 7

73 Pa.C.S. § 201-2(4)(xiv) ...................................................................................... 12

73 Pa.C.S. § 201-9.2(a) ........................................................................................... 12

73 Pa.C.S. § 201-1 et seq. ......................................................................................... 4

## RULES

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 5

## REGULATIONS

52 Pa. Code § 111.12(d)(2) ...................................................................................... 8

52 Pa. Code § 54 ....................................................................................................... 7

52 Pa. Code § 54.5 .................................................................................................... 7

52 Pa. Code § 54.5(b)(1) ......................................................................................... 17

52 Pa. Code § 56 ....................................................................................................... 7

## OTHER AUTHORITIES

*Final Order on Interim Guidelines Regarding Standards For Changing a Customer's Electricity Generation Supplier*,
  PA PUC Docket No. M-2011-2270442 (October 24, 2012) .................................... 1

*Final Order on the Guidelines for Use of Fixed Price Labels for Products with at Pass-Through Clause*,
  PA PUC Docket No. M-2013-2362961 (November 14, 2013) ................................ 2

*Final Rulemaking Order on the Marketing and Sales Practices for Retail Residential Energy Markets*,
  PA PUC Docket No. L-2010-2208332 (October 24, 2012) ................................... 1

*Order on the Review of Rules, Policies & Consumer Education Measures Regarding Variable Rate Retail Electric Products*,
 PA PUC Docket No. M-2014-2406134 (February 20, 2014).....................................................2

*Yaglidereliler Corp. v. Blue Pilot Energy, LLC*,
 Docket No. C-2014-2413732, 2014 WL 3011778 (Pa. P.U.C. June 18, 2014).........................7

## I.    PRELIMINARY STATEMENT

Plaintiff Anthony Ferrare ("Plaintiff") claims that IDT Energy, Inc. ("IDT"), an electric

generation supplier ("EGS"), engaged in a "bait and switch" scheme, under which it allegedly

enticed customers to switch from their existing electric distribution company ("EDC") to IDT

with promises of lower electric prices due to IDT's charging of variable "market rates."  In his

Complaint, Plaintiff asserts four claims against IDT: (1) violation of the Pennsylvania Unfair

Trade Practices and Consumer Protection Law ("UTPCPL") (Count I); (2) breach of an implied

covenant of good faith and fair dealing (Count II); (3) breach of contract (Count III); and

(4) unjust enrichment (Count IV).  *See* Complaint of Anthony Ferrare dated March 13, 2014

("Compl.").

These proceedings should be stayed under the doctrine of primary jurisdiction or,

alternatively, Plaintiff's Complaint should be dismissed.  Pennsylvania and federal law recognize

that a court should abstain from deciding issues that should be presented in the first instance to

the agency that administers the regulatory scheme.  Plaintiff's claims relate exclusively to IDT's

marketing and sales practices, which are clearly regulated by the Pennsylvania Public Utility

Commission ("PUC").  The Electricity Generation Customer Choice and Competition Act

provides the PUC with authority to regulate EGSs for licensing and similar purposes.  *See* 66

Pa.C.S. § 2809.  The PUC has considerable experience and expertise in the regulation of EGSs,

and has undertaken a number of investigations and rulemakings in recent years to develop a

robust regulatory framework governing EGS sales and marketing practices.[1]  As such, the Court

---

[1]      *See, e.g., Final Order on Interim Guidelines Regarding Standards For Changing a Customer's Electricity Generation Supplier*, PA PUC Docket No. M-2011-2270442 (October 24, 2012); *Final Rulemaking Order on the Marketing and Sales Practices for Retail Residential Energy Markets*, PA PUC Docket No. L-2010-2208332 (October 24, 2012); *Final Order on the*
*Continued on following page*

should abstain from deciding the issues raised in the Complaint until an initial ruling is obtained from the PUC regarding IDT's challenged practices, and whether those practices comply with the PUC's regulations.  Deferring to the PUC on this issue will promote consistency and uniformity in policy.  Indeed, before Plaintiff served IDT with the Complaint, the Pennsylvania Attorney General commenced a proceeding before the PUC relating to the IDT marketing practices called into question here, and whether those practices comply with the Pennsylvania Public Utility Code and the PUC's regulations.  Therefore, this case should be dismissed or, alternatively, stayed while the PUC makes an initial determination on the challenged practices.

Even if this case is not dismissed or stayed under the doctrine of primary jurisdiction, each Count of Plaintiff's Complaint should be dismissed for independent, compelling reasons.  As Plaintiff alleges, IDT's provision of electric generation supply services to Plaintiff is governed by the parties' agreement. *See, e.g.,* Compl. ¶¶ 53, 59.  Count I (the UTPCPL claim) is barred by the economic loss doctrine because Plaintiff allegedly incurred only "economic" damages, and the underlying claim is intertwined with the parties' agreement.  Additionally, because IDT's Terms of Service expressly addressed pricing, Plaintiff cannot demonstrate justifiable reliance – an essential prerequisite of his UTPCPL claim under Pennsylvania and Third Circuit precedent – as a matter of law.  Counts II (breach of implied good faith) and III (breach of contract) are legally deficient under well-established precedent because Plaintiff has failed to identify any specific term or provision of the parties' agreement that was breached and, indeed, the Terms of Service expressly disclosed the variable nature of IDT's pricing, IDT's

---

*Continued from previous page*
*Guidelines for Use of Fixed Price Labels for Products with at Pass-Through Clause*, PA PUC Docket No. M-2013-2362961 (November 14, 2013); *Order on the Review of Rules, Policies & Consumer Education Measures Regarding Variable Rate Retail Electric Products*, PA PUC Docket No. M-2014-2406134 (February 20, 2014)

pricing methodology, and that there is no "ceiling" price.  Count IV (unjust enrichment) fails as a matter of law because, as Plaintiff acknowledges, the parties' relationship arises from a "valid contract."  Compl. ¶¶ 53, 59.

For all of these reasons, as explained more fully below, these proceedings should be stayed or, alternatively, Plaintiff's Complaint should be dismissed.

## II.    FACTUAL BACKGROUND[2]

IDT is an EGS licensed by the PUC to supply electric generation to residential and commercial customers throughout Pennsylvania.  Compl. ¶ 8.  As an EGS, IDT sells electricity to end-user customers using the distribution facilities of existing EDCs.  *Id.* at ¶¶ 8, 12.

Plaintiff entered into an agreement with IDT for the provision of electric services in or about August 2013.  *Id.* ¶ 7.  Although not attached to Plaintiff's Complaint, the Terms of Service in effect at the time Plaintiff entered into the agreement explicitly stated that:

> IDT Energy offers a ***variable price*** for all electric generation sold under this Agreement. The price for electric generation sold is established on an approximately monthly basis based upon electric generation market pricing as furnished by PJM clearing house, transportation or transmission, and other market and business price related factors. ***This price may be higher or lower*** than the EDC's price in any particular month. ***There is no ceiling price.***
> ---
> A residential customer may cancel this Agreement at any time during the three (3) business days following receipt of this Agreement by calling IDT Energy . . . .

Declaration of Wayne Stoughton, Ex. A (Terms of Service, sections entitled "Basic Service Prices" and "Cancellation Provision") (emphasis added).[3]  The Terms of Service further

---

[2]    For purposes of this Motion to Dismiss only, IDT accepts Plaintiff's factual allegations in the Complaint as true.  IDT expressly reserves the right to contest the allegations in the Complaint should the matter proceed beyond the Motion to Dismiss.

[3]    When deciding a motion to dismiss, the court may consider the allegations of the complaint, attached exhibits and matters of public record. *Boyden v. Township of Upper Darby*, --- F. Supp. 2d ---, 2014 WL 1152149 (E.D. Pa. 2014) (citing *Pension Benefits Guar. Corp. v.*

*Continued on following page*

provided that "All rebate amounts advertised and presented to customers **are estimates** based upon customer's prior electric and/or natural gas usages.  Actual rebate amounts will be based on customer's actual usage over the term of this agreement, **which may vary from any estimate**."  *Id.* (section entitled "Rebates and Introductory Price/Special Promotion Options") (emphasis added).  At the time Plaintiff entered into his agreement with IDT, the Terms of Service document was publicly available on IDT's website.  Declaration of Wayne Stoughton, at ¶ 4.  Plaintiff bases his claims in part on statements on IDT's "website and customer agreements."  *See* Compl. ¶ 17; http://idtenergy.com/terms/.

Plaintiff commenced this action against IDT on March 13, 2014 with the filing of the Complaint in the Court of Common Pleas of Philadelphia County.  The Complaint includes four Counts:  violation of the UTPCPL, 73 Pa.C.S. § 201-1 *et seq.* (Count I); breach of the implied covenant of good faith and fair dealing (Count II); breach of contract (Count III); and unjust enrichment (Count IV).  Plaintiff alleges that he has been victimized by a "bait and switch" scheme allegedly perpetrated by IDT.  *Id.* ¶ 1.  According to the Complaint, IDT's variable rate customers paid more for electricity after they switched from their local utility or other energy supplier to IDT based on allegedly false representations made by IDT that it would provide market-based rates and savings on customer's electricity bills.  *See id.* ¶¶ 1, 17, 18.

---

*Continued from previous page*
*White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Furthermore, a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document."  *Id.*; *see also Tlush v. Manufacturers Res. Ctr.*, 315 F. Supp. 2d 650, 654 (E.D. Pa. 2002) (citing *Pension Benefits*, 998 F.2d at 1196) ("[A] court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

On August 7, 2014, IDT filed a notice of removal in this Court under 28 U.S.C. §§ 1332 and 1441, as amended in relevant part by the Class Action Fairness Act of 2005, and authorized by 28 U.S.C. § 1453.

### III.   LEGAL STANDARD

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead enough facts to state a claim for relief that is "plausible" (as opposed to just "conceivable"). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted). To survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

Applying this pleading standard, Plaintiff's Complaint fails to state a claim against IDT and should accordingly be dismissed.

### IV.   ARGUMENT

**A.   This Matter Should Be Stayed Because Primary Jurisdiction Over Plaintiff's Claims Lies With The PUC.**

The doctrine of primary jurisdiction is "well settled" under the laws of the Commonwealth of Pennsylvania and the United States. *Weston v. Reading Co.*, 282 A.2d 714, 723 (Pa. 1971) (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Trans-Atlantic*, 400 U.S. 62, 68 (1970)). The doctrine "requires judicial abstention in cases where the

protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Weston*, 282 A.2d at 723 (quoting *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963)); *see also Associated Tel. Answering Exchanges, Inc. v. AT&T Co.*, 492 F. Supp. 921 (E.D. Pa. 1980) (staying proceedings pending a decision by the PUC and stating that "[u]nder the doctrine of primary consideration, a district court will refrain from deciding a case until the case has been considered and decided by the agency with concurrent jurisdiction"). This creates a "workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's competence." *Elkin v. Bell Tel. Co. of Pennsylvania*, 420 A.2d 371, 376 (Pa. 1980). Thus, the doctrine of primary jurisdiction serves various purposes, chief of which are to (1) derive benefits from "the agency's special experience" and (2) promote "consistency and uniformity in certain areas of administrative policy." *Id.*

The doctrine of primary jurisdiction is "not simply a polite gesture of deference to the agency seeking an advisory opinion wherein the court is free to ignore the agency's determination." *Id.* Rather, the Supreme Court of Pennsylvania has explained the significance of the doctrine's processes as follows:

> [O]nce the court properly refers a matter or a specific issue to the agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate review through normal channels), and is not subject to collateral attack in the pending court proceeding . . . . Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination.

*Id.* at 376-77; *see also MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1105 (3d Cir. 1995) ("Under this bifurcated procedure, the issue of liability is transferred to, and initially

determined by, the PUC. If necessary, the appropriate trial court thereafter determines damages.").

In determining whether the doctrine of primary jurisdiction applies, "courts must look beyond the form of action to the *essence* of the underlying claims." *County of Erie v. Verizon North, Inc.*, 879 A.2d 357, 364 (Pa. Commw. Ct. 2005) (citing *T.W. Phillips Gas & Oil Co. v. Peoples Nat. Gas Co.*, 492 A.2d 776, 779 (Pa. Commw. Ct. 1985)) (emphasis in original). For example, "breach of contract" claims can be a "cover disguising the real thrust of the complaint." *County of Erie*, 879 A.2d at 360 n.3, 364 (transferring action to PUC even though plaintiff's complaint included claims for accounting, injunction, breach of fiduciary duty, unjust enrichment, and conversion) (internal quotation marks, brackets, and citation omitted). Thus, "the nature of the claims a plaintiff brings is not necessarily determinative of the question of whether the doctrine of primary jurisdiction applies." *Pettko v. Pa. Am. Water Co.*, 39 A.3d 473, 480 (Pa. Commw. Ct. 2012).

Here, the "essence" and "thrust" of Plaintiff's claims unquestionably implicate the PUC's regulatory authority over EGSs. The PUC is responsible for regulating EGSs and ensuring that the quality of service provided by electric utilities does not deteriorate. 66 Pa.C.S. § 2809(e). The PUC's applicable EGS regulations are found at Chapters 54 and 56 of Title 52 of the Pennsylvania Code. The regulations require EGSs to provide customers with written disclosures on variable pricing, 52 Pa. Code § 54.5, as well as disclosures in marketing materials, *id.* § 54.7. For purposes of licensing, the PUC prohibits EGSs from engaging in deceptive marketing or billing acts, *id.* §§ 54.42(6) & (8), 54.43(f), and requires EGSs to provide accurate information to customers using plain language and common terms, *id.* § 54.43(1). *Yaglidereliler Corp. v. Blue Pilot Energy, LLC*, Docket No. C-2014-2413732, 2014 WL 3011778, at *6 (Pa. P.U.C. June 18,

2014).  Moreover, the entirety of Chapter 111 of the PUC's regulations—which likewise applies to EGSs—is comprised of detailed requirements for marketing and sales practices in residential markets, including requirements regarding representations relating to rates and savings.  52 Pa. Code § 111.12(d)(2).

The PUC's expertise in this area is considerable.  Pennsylvania appellate courts have consistently recognized the PUC's expertise with respect to evaluating reasonable and adequate service under its regulations.  *See Pettko*, 39 A.3d at 480.  As one court explained "[w]hen a utility's failure to maintain a reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are couched, it is for the PUC, initially, to determine whether the service provided by the utility has fallen short of the statutory standard required of it."  *Id.* (quoting *County of Erie*, 879 A.2d at 364 and *Morrow v. Bell Tel. Co. of Pa.*, 479 A.2d 548, 550-51 (Pa. Super. Ct. 1984)).

Additionally, the need to promote consistency and uniformity in policy is prevalent here. The PUC is in the best position to provide consistent rulings and uniform solutions regarding disputes over the marketing and disclosure practices of EGSs.  Moreover, as noted above, nearly a month before Plaintiff served IDT with the Complaint, the Attorney General of the Commonwealth Kathleen G. Kane, along with Consumer Advocate Tanya J. McCloskey, filed a Joint Complaint against IDT at the PUC relating to the very same marketing practices challenged by Plaintiff here.  *See Commonwealth of Pennsylvania, by Attorney General Kathleen Kane, Through the Bureau of Consumer Protection and Tanya J. McCloskey, Acting Consumer Advocate v. IDT Energy, Inc.*, PA PUC Docket No. C-2014-2427657.  Thus, uniformity and conservation of resources would be promoted by dismissing or, alternatively, staying this court

action while the PUC makes an initial determination regarding whether IDT's practices comply with the Pennsylvania Public Utility Code and the PUC's regulations.

IDT recognizes that Plaintiff seeks monetary damages under the UTPCPL. However, this does not preclude the PUC from having primary jurisdiction over Plaintiff's claims—rather, it only precludes the PUC from having *exclusive* jurisdiction over Plaintiff's claims. *See Pettko*, 39 A.3d at 483-86. The difference between *primary* and *exclusive* jurisdiction has been explained as follows:

> If the available administrative remedies are complete and adequate to make the complainant whole, then the PUC has exclusive jurisdiction over the controversy and there is no recourse to the courts outside of the normal channels of appeal to the Commonwealth Court. However, where the administrative remedies are not adequate and complete, the PUC's jurisdiction is not exclusive and an action for damages may be brought in a court of common pleas **based upon the PUC's initial determination** of the matters within its realm of expertise.

*Id.* (quoting *DiSanto v. Dauphin Consolidated Water Supply Co.*, 436 A.2d 197, 202 (Pa. Super. Ct. 1981)) (emphasis added).

The Commonwealth Court of Pennsylvania's decision in *Pettko* is instructive. There, the plaintiff brought class action claims against a water utility seeking compensation for overpayments and additional damages, alleging (1) a violation of the UTPCPL for deceptive trade practices; (2) conversion; and (3) breach of contract. 39 A.3d at 477. The court held that, even though the PUC could not provide all of the relief requested in the complaint, *i.e.*, the PUC could not award all of the damages requested with respect to the alleged UTPCPL violation, the proper recourse was to transfer the matter to the PUC under the doctrine of primary jurisdiction because the essence of the plaintiff's claims invoked issues within the PUC's regulatory purview. *Id.* at 485-86. The doctrine is equally applicable when issues within the PUC's regulatory purview are presented before a federal court. *See, e.g., Assoc. Tel. and Answering Exchanges,*

*Inc.*, 492 F. Supp. at 925 (staying proceedings until the PUC could address a relevant issue and stating that "there are federal courts which have stayed proceedings in order to refer a case to a state regulatory agency . . . . I am confident, therefore, that the use of the doctrine of primary jurisdiction is appropriate in this case"). Here, the essence of Plaintiff's claims clearly invoke issues within the PUC's regulatory purview. Plaintiff's claims challenge IDT's sales and marketing practices, which are explicitly regulated by the PUC in its role as the primary regulator of EGSs in Pennsylvania.

For the reasons set forth above,  this Court should dismiss the Complaint.  Alternatively, the Court should stay these proceedings under the doctrine of primary jurisdiction until such time as the PUC has made a final determination in the matter of *Commonwealth of Pennsylvania, by Attorney General Kathleen Kane, Through the Bureau of Consumer Protection and Tanya J. McCloskey, Acting Consumer Advocate v. IDT Energy, Inc.*, PA PUC Docket No. C-2014-2427657, as to whether IDT violated the PUC's regulations regarding sales and marketing practices governing EGSs.

**B.      Each Count of Plaintiff's Complaint Should Be Dismissed For Independent Compelling Reasons.**

Even if this Court does not dismiss or stay these proceedings under the doctrine of primary jurisdiction, each of Plaintiff's claims should be dismissed for independent reasons, as explained below.

**1.      Plaintiff's UTPCPL Claim Should Be Dismissed For Failure To State A Claim.**

Plaintiff's UTPCPL claim fails because (1) it is barred by Pennsylvania's economic loss doctrine and (2) Plaintiff cannot demonstrate justifiable reliance on any alleged misrepresentation, as is required under the UTPCPL.

a.   **Plaintiff's UTPCPL Claim Is Barred Under The Economic Loss Doctrine.**

Pennsylvania's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  With respect to fraud claims, including claims under the UTPCPL, a plaintiff's claim can *only* survive if it is "extraneous to the contract," not "interwoven with the breach of contract." *Wulf v. Bank of America, N.A.*, 798 F. Supp. 2d 586, 595 (E.D. Pa. 2011) (quoting *Werwinski*, 286 F.3d at 676).  An allegation of "[f]raudulent representations concerning a party's performance of a contract [is] interwoven with the terms of the contract." *Wulf*, 798 F. Supp. 2d at 596 (quoting *Ferki v. Wells Fargo Bank*, No. 10-2756, 2010 WL 5174406, at *10 (E.D. Pa. Dec. 20, 2010)).

The Third Circuit's decision in *Werwinski* is instructive.  There, the Court of Appeals held that the named plaintiffs' UTPCPL claim against Ford Motor Company was barred by the economic loss doctrine because the only damages alleged pertained to the inadequacy of a product sold under a contract.  286 F.3d at 674-81.  This Court and other courts within the Third Circuit, applying Pennsylvania law, have similarly held that the economic loss doctrine bars UTPCPL claims when, as in the instant case, the plaintiff alleges only economic loss and the alleged conduct was interwoven with the terms of an underlying contract. *See Gadley v. Ellis*, No. 3:13-cv-17-KRG, 2014 WL 3696209, at *5-6 (W.D. Pa. July 23, 2014); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 518 (E.D. Pa. 2012); *Wulf*, 798 F. Supp. 2d at 595-97; *Friscarella v. Midland Mortg. Co.*, No. 10-1647, 2011 U.S. Dist. Lexis 53176, at *1-2 (W.D. Pa. May 18, 2011); *DeFebo v. Andersen Windows, Inc.*, 654 F. Supp. 2d 285, 294 (E.D. Pa. 2009).

Here, Plaintiff asserts that IDT's alleged misrepresentations of performance under the agreement caused him to pay more for energy than he should have paid and, thus, all of his alleged damages stem from his assertion that he paid more for electric energy than he should have under the parties' agreement. *See* Compl. ¶¶ 24-28, 33-48.  However, as this Court has consistently held, an allegation of "[f]raudulent representations concerning a party's performance of a contract are interwoven with the terms of the contract," *see, e.g., Wulf*, 798 F. Supp. 2d at 596, and a UTPCPL claim cannot survive under the economic loss doctrine if it is "interwoven with the breach of contract." *Id.* at 595 (quoting *Werwinski*, 286 F.3d at 676).[4]  Thus, Plaintiff's UTPCPL claim should be dismissed under the economic loss doctrine.

### b.    Given The Written Disclosures In The Terms of Service, Plaintiff Cannot Demonstrate Justifiable Reliance.

To bring a private cause of action under the UTPCPL, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001)).  The justifiable reliance requirement stems from the UTPCPL's standing provision, 73 Pa.C.S. § 201-9.2(a) (permitting suit by private plaintiffs who suffer loss "as a result of" the defendant's deception). *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) (citing *Schwartz v. Rockey*, 932 A.2d 885, 897

---

[4]     Plaintiff's UTPCPL claim is based on IDT's alleged "[f]ailing to comply with any written guaranty or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services was made," 73 Pa.C.S. § 201-2(4)(xiv), and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," *id.* § 201-2(4)(xxi).  Plaintiff does not identify "any written guaranty or warranty" outside of the parties' agreement.  Indeed, the Terms of Service governing Plaintiff's purchase of electricity service from IDT explicitly addresses IDT's variable pricing structure and disclaims any promises or guarantee of future savings.  Ex. A (sections entitled "Basic Service Prices" and "Rebates and Introductory Price/Special Promotion Options").

n.16 (Pa. 2007)).  The requirement applies to all of the UTPCPL's subsections.  *Hunt*, 538 F.3d at 222.

Here, the Terms of Service clearly establish that the parties' agreement is, in fact, for variable rates, and specifically disclaim any promises or guarantee of future savings.  The Terms of Service explicitly provide, under the section entitled "Basic Service Prices":

> IDT Energy offers a ***variable price*** for all electric generation sold under this Agreement.  The price for electric generation sold is established on an approximately monthly basis based upon electric generation market pricing as furnished by PJM clearing house, transportation or transmission, and other market and business price related factors. ***This price may be higher or lower*** than the EDC's price in any particular month. ***There is no ceiling price.***

Ex. A. (emphasis added).  The Terms of Service further provide that "All rebate amounts advertised and presented to customers ***are estimates*** based upon customer's prior electric and/or natural gas usages.  Actual rebate amounts will be based on customer's actual usage over the term of this agreement, ***which may vary from any estimate.***"  *Id.* (Rebates and Introductory Price/Special Promotion Options) (emphasis added).  Given the foregoing provisions, Plaintiff cannot have justifiably relied upon representations regarding the rates to be charged by IDT made outside of the four corners of the Terms of Service as a matter of law.

Courts within this Circuit have dismissed consumer fraud claims asserted against energy suppliers – at the pleading stage – for the same purported misconduct at issue here where the suppliers complied with valid terms of an agreement that allowed for variable rate service.  For example, in *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012), a consumer of residential electricity brought a purported class action against Energy Plus under the New Jersey Consumer Fraud Act for falsely making exaggerated claims of energy savings.  *Id.* at *1.  Like here, the plaintiff alleged that Energy Plus lured potential customers with representations that they could save money off local utility company rates.  *Id.* at *6.  The

plaintiff, in alleged reliance on such statements, claimed that he switched service providers, realized only nominal savings in the first month of service, and thereafter began paying as much as *36% more* for his energy under a variable rate contract. *Id.* at *5. On a motion to dismiss, the court dismissed the plaintiff's consumer fraud claims, stating "Plaintiff's claim that Defendants engaged in a 'classic bait and switch scheme' whereby they lured potential customers in by making exaggerated claims of energy savings which ultimately proved 'illusory,' is undercut by the explicit language contained in the parties' Agreement that monthly rates would be 'variable,' based on a variety of external factors." *Id.* at *6; *see also Slack v. Suburban Propane*, No. 10-2548, 2010 WL 3810870 (D.N.J. Sept. 21, 2010) (holding that plaintiffs' claim that the defendants engaged in a practice of deceptively "jacking" its prices for reasons inconsistent with legitimate business factors was "undercut by Defendants' explicit reservation of the right to increase charges and/or fees in any amount they deem fit (based upon 'market fluctuations and other factors')").

As in *Feistl* and *Suburban Propane*, the explicit language of IDT's Terms of Service forecloses Plaintiff's ability to state a UTPCPL claim. Therefore, Plaintiff's UTPCPL claim should be dismissed.

**2.    Plaintiff's Claims For Breach of Contract (Count III) And Breach Of The Covenant Of Good Faith And Fair Dealing (Count II) Should Be Dismissed Because Plaintiff Does Not Identify Any Specific Provision Of The Parties' Agreement Breached By IDT And An Express Provision Of The Terms Of Service Governs Pricing.**

Plaintiff asserts claims for breach of contract (Count III) and breach of the covenant of good faith and fair dealing (Count II). Compl. ¶¶ 49-63. These claims are deficient as a matter of law. To state a claim for breach of contract under Pennsylvania law, a plaintiff "must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty

imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  To state a claim for breach of the covenant of good faith and fair dealing under Pennsylvania law, the "plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching *a specific duty* imposed by the contract *other than the covenant of good faith and fair dealing*, and that resultant damages were incurred by plaintiff." *Sheinman Provisions, Inc. v. Nat'l Deli LLC*, No. 08-453, 2008 WL 2758029, at *3 (E.D. Pa. July 15, 2008) (emphasis added).

Plaintiff's breach of contract claim does not identify any specific provision of the parties' agreement that IDT supposedly breached. *See* Compl. ¶¶ 58-63.  Unable to do so, Plaintiff blends his claims for breach of contract (Count III) and breach of the covenant of good faith and fair dealing (Count II), asserting that because "the relevant agreements between IDT Energy and its customers do not specify the applicable price, to prevent the contract from being too indefinite or from placing Plaintiffs and the class at Defendant's mercy, the agreements should be deemed to contain an *implied* contractual term mandating a reasonable price" and that "[i]n this case, a reasonable price would be the prevailing market rates in effect during the applicable class period." Compl. ¶ 62 (Count III – breach of contract) (emphasis added); *see also id.* ¶ 55 ("[T]he Court should apply a reasonable, market-based rate; that is, a rate similar, competitive, or equivalent to the rate charged by the class members' local public utility during the class period.") (Count II – breach of the covenant of good faith and fair dealing).

Both claims must necessarily fail.  As recognized by the Third Circuit, "[t]he law will imply a term only for omitted covenants.  There can be no implied covenant as to any matter

- 15 -

specifically covered by the written contract between the parties." *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 439 (3d Cir. 1993) (quoting *Reading Terminal Merchants Ass'n v. Samuel Rappaport Assocs.*, 456 A.2d 552, 557 (Pa. 1983)); *see also Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986).  Thus, it is only "[i]n the *absence of an express provision*, [that] the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made[.]" *USX Corp.*, 988 F.2d at 439 (quoting *Daniel B. Van Campen Corp. v. Building & Constr. Trades Council*, 195 A.2d 134, 136-37 (Pa. Super Ct. 1963)) (emphasis in original).

Here, there is an express provision governing pricing in the Terms of Service applicable to Plaintiff's purchase of electricity service from IDT.  The Terms of Service explicitly sets out the "variable" nature of pricing, the factors used to determine pricing, and that there is no "ceiling" on pricing.  Ex. A (Basic Service Prices).  Specifically, the Terms of Service explicitly states that "IDT Energy offers a *variable price* for all electric generation" based upon "PJM clearing house, transportation or transmission, and other market and business price related factors" and that "*this price may be higher or lower* than the EDC's price in any particular month" and  "*[t]here is no ceiling price.*" *Id.* (emphasis added).[5]  Because the "Basic Service Prices" provision addresses the very issues that Plaintiff claims should be "implied" into the

---

[5]     To the extent that Plaintiff alleges that IDT failed to charge "market" rates, *see, e.g.,* Compl. ¶¶ 1, 13, 17, 21, Plaintiff fails to allege, as he must, that IDT did not calculate prices in accordance with the Terms of Service – based upon "PJM clearing house, transportation or transmission, and other market and business price related factors."  Ex. A (Basic Service Prices). Moreover, Plaintiff's allegation that an implied "reasonable" rate would have been the price for electricity charged by a local utility company, Compl. ¶¶ 55, 62, is belied by the parties' agreement, which explicitly provided that the "price *may be higher or lower* than the EDC's price in any particular month." *Id.*

parties' agreement, Plaintiff cannot state a claim for either breach of contract or breach of the covenant of good faith and fair dealing.  *See USX Corp.*, 988 F.2d at 439 ("[S]ince Prime expressly agreed in the Collateral Assignments to give USX certain notices concerning the status of the leases, such notices cannot be considered the subject of 'implied' terms."); *Smith v. Allstate Corp.*, Nos. 12-144, 12-0145, 2012 WL 2849258, at *7 (E.D. Pa. July 11, 2012). Therefore, Counts II and III should be dismissed.

3.    **Plaintiff's Claim For Unjust Enrichment Fails As A Matter of Law Because The Parties' Relationship Arises From A "Valid Contract."**

Plaintiff's unjust enrichment claim (Count IV) also is legally deficient.  The doctrine of unjust enrichment is inapplicable where the relationship between the parties is founded upon a written agreement or express contract – the doctrine applies only where there is no agreement. *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254-55 (Pa. 2006) ("it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract"); *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) ("we may not make a finding of unjust enrichment . . . where a written or express contract between parties exists").  Plaintiff acknowledges that the terms of his relationship with IDT are governed by a "valid contract."  Compl. ¶¶ 53, 59.  Indeed, the applicable PUC regulations require that an EGS provide a new customer with written terms of service.  52 Pa. Code § 54.5(b)(1).  Because the Terms of Service govern the parties' relationship, Count IV is barred and should be dismissed.  *See Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 780 (M.D. Pa. 2008) (dismissing unjust enrichment); *Montanez*, 876 F. Supp. 2d at 515-17 (same).

## V.    CONCLUSION

For all of these reasons, the Court should stay these proceedings in their entirety or, alternatively, dismiss Plaintiff's Complaint.


Dated: September 4, 2014                              Respectfully submitted,


                                                     /s/ Marc A. Goldich
                                                     Marc A. Goldich (SBN 93055)
                                                     REED SMITH LLP
                                                     Three Logan Square
                                                     1717 Arch Street, Suite 3100
                                                     Philadelphia, PA 19103
                                                     Tel: +1 215 851 8100
                                                     Fax: +1 215 851 1420
                                                     mgoldich@reedsmith.com

                                                     Thomas L. Allen (SBN 33243) *(to be admitted pro hac vice)*
                                                     Justin J. Kontul (SBN 206026) *(to be admitted pro hac vice)*
                                                     REED SMITH LLP
                                                     225 Fifth Avenue
                                                     Pittsburgh, PA 15222
                                                     Tel: +1 412 288 3066
                                                     Fax: +1 412 288 3063
                                                     tallen@reedsmith.com
                                                     jkontul@reedsmith.com

                                                     *Counsel for Defendant IDT Energy, Inc.*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------X

ANTHONY FERRARE, on behalf of himself
and all others similarly situated,

                     Plaintiff,

    - against -

IDT ENERGY, INC.

                     Defendant.

Civil Action No.: 2:14-cv-04658-AB

Class Action

---------------------------------------------------------X

## DECLARATION OF WAYNE STOUGHTON

I, Wayne Stoughton, hereby declare:

1.    I am over the age of twenty-one (21) years, am competent to testify to the facts stated in this Declaration, and have personal knowledge of the facts and statements made in this Declaration.

2.    I am currently employed as Vice President of Customer Service & Regulatory Compliance for IDT Energy, Inc ("IDT"). I have held this position since March of 2005.

3.    Attached hereto as Exhibit A is a true and correct copy of the IDT Terms of Service that were in effect at the time Plaintiff Anthony Ferrare entered into an agreement with IDT for the provision of electricity service in or around August 2013.

4.    The Terms of Service attached hereto as Exhibit A were also publicly available on IDT's website in or around August 2013.

Executed on September 2, 2014

# EXHIBIT A

**TERMS OF SERVICE-V.8**

This is an agreement for electric generation services, between IDT Energy, Inc. ("IDT Energy," "us" or "we") and
**«FIRST_NAME»  «LAST_NAME» ("Customer" or "you")**
**«ADDRESSLINE1»  «CITY», «STATE» «ZIP»**

IDT Energy is licensed by the Pennsylvania Public Utility Commission to offer and supply electric generation services in Pennsylvania. Our PUC license number is A-2009-2134623. Your generation prices and charges will be set by IDT Energy. The Public Utility Commission regulates distribution prices and services. The Federal Energy Regulatory Commission regulates transmission prices and services.

You will continue to receive your bill from your Electric Distribution Company (EDC) for all supply and delivery charges, your EDC will continue to provide all emergency repairs and services.

**Right of Rescission** - You may cancel this Agreement at any time before midnight of the fifth business day after receiving this disclosure.

**Definitions** - Generation Charge - Charge for production of electricity. Transmission Charge - Charge for moving high voltage electricity from a generation facility to the distribution lines of an electric distribution company.

**Starting Price-** The starting price per electric generation for customers starting on or about «Start_date» is «Rate».

**Basic Service Prices** - IDT Energy offers a variable price for all electric generation sold under this Agreement. The price for electric generation sold is established on an approximately monthly basis based upon electric generation market pricing as furnished by PJM clearing house, transportation or transmission, and other market and business price related factors. This price may be higher or lower than the EDC's price in any particular month. There is no ceiling price. Electric generation supply charges include estimated total state taxes. IDT Energy will comply with all required laws regarding sales tax and will include or exclude the appropriate sales taxes in each jurisdiction served, if any, as required by the Pennsylvania Department of Revenue for all Electric generation supply charges. Customers can call IDT Energy's Customer Service Dept. at 877-887-6866 for current variable pricing rates.

**Renewable Energy Supply Option -** "Renewable" energy refers to energy that is generated from, renewable sources, such as solar, wind, water or biomass. a customer chooses a renewable supply option, IDT Energy will ensure that 100% of the customer's electricity usage is matched with renewable energy certificates or renewable energy attributes. IDT Energy shall have up to 24 months from the end of each calendar year to address any deficiency that may have arisen in the renewable content of electricity sold under this Agreement during such calendar year. The price for renewable energy will be comprised of the IDT Energy variable price plus an amount that represents IDT Energy's cost in acquiring the renewable energy certificates or renewable energy attributes which shall not exceed three (3) cents per kwh.

**Rebates and Introductory Price/Special Promotion Options** - From time-to-time IDT Energy may offer rebates or special promotions. If a Customer participates in a rebate program, the Customer must remain in the program for the entire agreed upon term in order to qualify for the rebate. If a Customer cancels at any time prior to the agreed upon term, the Customer shall forfeit all rights and claims to any and all rebate offers. All rebate amounts advertised and presented to customers are estimates based upon customer's prior electric and/or natural gas usages. Actual rebate amounts will be based on customer's actual usage over the term of this agreement, which may very from any estimate. From time-to-time IDT Energy may offer eligible new customers an introductory price which will be in effect for the introductory price term. Upon expiration of the introductory price term the price shall revert to a standard variable price. IDT Energy will send any rebate or promotional payment to the customer address given to IDT Energy at the time of sign-up. It is the responsibility of the customer to notify IDT Energy of any changes to the customers billing address either in writing to: 550 Broad Street, Newark, NJ 07102 or by calling IDT Energy's Customer Service Dept. at 877-887-6866. IDT Energy will send all rebates and promotional payments and notices via first class mail and is not responsible for invalid addresses or undelivered items.

**Length of Agreement** - You will buy your electric generation services for your use from IDT Energy beginning on a date set by your EDC and continuing on month-to-month basis until either party provides at least fifteen (15) calendar days' notice of its intent to cancel and until EDC completes the termination in accordance with its rules.

**Penalties, Fees and Exceptions** –There are no fees or early cancellation penalties for canceling IDT Energy's variable rate plan.

**Cancellation Provisions** - A residential customer may cancel this Agreement at any time during the three (3)  business days following receipt of this Agreement by calling IDT Energy at 877-887-6866. After that time, this Agreement shall continue until either party provides the other with at least fifteen (15) calendar days' notice of its intent to cancel and until the EDC completes the cancellation in accordance with its rules.

**Renewal Provision** - This Agreement shall continue until either party provides at least fifteen (15) calendar days' notice of its intent to cancel and until EDC completes the cancellation in accordance with its rules.

**Agreement Expiration/Change in Terms** - If you have a fixed term agreement with us and it is approaching the expiration date or if we propose to change our terms of service, we will send you two advance written notices either in our bills or in separate mailings between 45 and 90 days before either the expiration date or the effective date of the changes.  We will explain your options in these two advance notices.

**Dispute Procedures-** Contact us with any questions concerning our terms of service at 877-887-6866. If you are not satisfied after discussing your terms with us you may call or write the Public Utility Commission (PUC).

**Public Utility Commission, PO Box 3265, Harrisburg, PA 17105-3265, 800-692-7380**

**Contact Information: Supplier:** IDT Energy, 550 Broad Street, Newark, New Jersey 07102, 877-887-6866, www.idtenergy.com

**\*Distribution Company Provider of Last Resort:** Pennsylvania Power and Light, PPL Electric Utilities, 827 Hausman Road, Allentown, PA 18104-9392, 800-342-5775
**\*Distribution Company Provider of Last Resort:** Philadelphia Electric Company, PECO, 2301 Market Street, Philadelphia, PA 19103, 800-494-4000
**\*Distribution Company Provider of Last Resort:** Metropolitan Edison Company, Met-Ed, PO Box 3687, Akron, Ohio, 44309, 800-545-7741
**\*Distribution Company Provider of Last Resort:** Pennsylvania Electric Company, Penelec, PO Box 3687, Akron, Ohio, 44309,800-545-7741
**\*Distribution Company Provider of Last Resort:** Duquesne Light, DLC, 411 Seventh Avenue, 6-1, Pittsburgh, PA 15219, 412-393-7100
**\*Distribution Company Provider of Last Resort:** West Penn Power, WPP, PO Box 3615 Akron, Ohio 44309, 800-686-0021

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a true and correct copy of the foregoing

Defendant IDT Energy, Inc.'s Memorandum of Law in Support of Motion to Stay or,

Alternatively, Dismiss and all accompanying papers on September 4, 2014 via CM/ECF upon

the following counsel of record:

Troy M. Frederick, Esq.
Marcus & Mack, P.C.
57 South Sixth Street
Indiana, PA 15701

Jonathan Shub, Esq.
Seeger Weiss LLP
1515 Market St, Suite 1380
Philadelphia, PA 19102

REED SMITH LLP

By: */s/ Marc A. Goldich*
     Marc A. Goldich

- 19 -