IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY FERRARE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IDT ENERGY, INC.<br><br>Defendant | No. 2:14-cv-04658-AB<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Anthony Ferrare brings this action against Defendant IDT Energy, Inc., (hereafter "Defendant" or "IDT Energy"), by and through his attorneys, individually and on behalf of all others similarly situated ("Class Members"), and respectfully alleges as follows:

**NATURE OF THE CASE**

1. This is a proposed class action brought by Plaintiff on behalf of himself and other similarly situated customers of Defendant. Defendant has and continues to promise customers competitive market-based rates and savings on their electric energy bills if they switch from their local utilities or other energy suppliers to IDT Energy. However, these promises are quickly broken after the initial "teaser" rate expires. Defendant routinely increases its customers' rates well above the market, sometimes by as much as 300%. A customer may even end up paying two to three times more for electricity than what he or she paid before converting to IDT Energy. Instead of benefitting from switching to IDT Energy, a typical customer loses hundreds or even thousands of dollars per year. Defendant's acts and omissions in connection with its energy supply activities constitute

1

breach of contract and/or a breach of the covenant of good faith and fair dealing, and warranty declaratory relief.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs, and is a class action in which members of the putative Class are citizens of States different from Defendant.

3. No administrative or other non-judicial adjudicative body in the Commonwealth of Pennsylvania has jurisdiction or authority to hear the dispute raised in this litigation and regarding Defendant's breach of its pricing agreement with Plaintiff and the proposed class. As Defendant states in its standard Terms of Service: "the generation prices and charges will be set by IDT Energy. The Public Utility Commission regulates distribution prices and services. The Federal Energy Commission regulates transmission prices and services." Accordingly, on August 20, 2014, the Pennsylvania Public Utility Commission adopted the argument put forth by IDT that the Public Utility Commission lacked jurisdiction to hear customer complaints relating to the rates charged by IDT. *See Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*, Pennsylvania Public Utility Commission, Docket No. C-2014-2427657, 2014 WL 4374209 (Aug. 20, 2104).

4. Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendant regularly transact and solicit business in this District.

## PARTIES

5. Plaintiff Anthony Ferrare is a resident of Erie, Erie County, Pennsylvania. In or about August, 2013, Mr. Ferrare enrolled as an IDT Energy customer. As a result of Defendant's conduct, Mr. Ferrare has incurred hundreds of dollars in overcharges from January 2014 to March 2014. In

some of those months, the rate that IDT Energy charged per kilowatt hour (KWH) was nearly 300% above the market rate.

6. Defendant IDT Energy, Inc., is a Delaware corporation with its principal place of business at 520 Broad Street, Newark, New Jersey 07102.  Defendant IDT Energy is licensed as an electricity supplier in Pennsylvania with a license number of A-2009-2134623.  Upon information and belief, IDT Energy is a wholly owned subsidiary of Genie Energy Ltd. that was created in 2004 and has an annual revenue of approximately $200 Million.  Defendant IDT Energy, Inc. regularly and systematically conducts business throughout the Commonwealth and throughout Philadelphia County.

7. At all times relevant herein, Defendant was engaged in the business of marketing, advertising and selling utility services to consumers in Pennsylvania.

## **OPERATIVE FACTS**

8. In the 1990s, in an effort to improve efficiency and foster competition, several states began experimenting with the deregulation of utilities, including electricity, provided to and made available for their citizens.

9. Under these states' deregulation laws, the supply portion of a consumer's electric bill is separated from the delivery portion.  In theory, with the supply portion open to competition, customers can freely shop around for the best price for their energy, creating a market check on energy rates rather than a regulated tariff or rate structure.   However, the system can only work when the promises energy providers make to the consuming public are truthful and honored.

10. Regrettably, state deregulation has created a cottage industry of energy "middleman" that have been the subject of various media investigative reports detailing the unsavory tactics many of these companies employ. See, e.g. "Electric Shadyland: How Power Companies Rip You off",

MOTHER JONES (January/February 2014 issue) (located at

http://www.motherjones.com/environment/2014/01/deregulation-energy-enron-company-electricity).

11. In 1996, Pennsylvania joined those states that were experimenting with deregulation of energy supply.  Energy deregulation in Pennsylvania was to enable consumers to purchase their energy supply from an Energy Services Company (ESCO) of their choice.  Since deregulation, the utility company (the former monopoly) is no longer the only option for energy supply.  After deregulation, customers can purchase electricity from ESCOs while continuing to obtain delivery through their local public utilities.  By opening up the market to consumer choice among various ESCO "bidders", the Commonwealth intended for competition to drive down customer rates.

12. Defendant's practices emerge from, and attempt to exploit, the deregulation of the electricity supply market in Pennsylvania.

13. The scheme works as follows: Defendant offers a standard service contract to residents of Pennsylvania with an initial "teaser" rate that is then replaced by a variable rate which Defendant promises will be competitively keyed to market factors.   However rather than provide  such competitive rates, Defendant charges customers to an exorbitant monthly rate far out of line with the competition or market factors after the initial "teaser" rate.

14. Defendant states to consumers, like Plaintiff, who are considering switching electricity suppliers that: "The difference is that IDT Energy shops the wholesale energy markets for you in an effort to reduce your annual energy expenses. [] When you exercise your power to choose, you can rest assured that you'll get the same great product and customer service as you always have.  And, if you aren't completely satisfied, you can cancel at any time with no penalty."

15. Defendant states further that "Throughout the year, as electric and natural gas rates rise and fall, IDT Energy scours the wholesale energy markets seeking the best rates. Those savings are

passed along to our customers." "The energy market is now deregulated, which means you have the freedom to choose IDT Energy® service to save money on the supply of your electricity and natural gas — similar to the choices available to you on your phone service." "Choosing IDT Energy isn't just about the cheapest electric and gas rates." "The bottom line: We offer choice, reliability and savings." In sum, Defendant states: "Our mission is simple - to reduce your annual energy expenses."

16.  Continuing in the same vein of promises, Defendant's standard Terms of Service make clear that the promised competitive rate, while variable, is "based upon electric generation market pricing . . . , transportation or transmission,[1] and other market and business price related factors."

17.  Notwithstanding the aforementioned promises, Defendant's rates (after the initial "teaser" rate) are not competitive with other suppliers, other wholesale market services, or in line with genuine market-related factors. Customers who switch to IDT can pay as much as up to almost four times the going rate in their area. Defendant's customers regularly complain that their rates far exceed that of any other supplier, that their rates have more than doubled after the first few months, and that they are often being overcharged by up to 300% or 400% as compared to remaining with their local utilities (the old monopolies).

18.  Defendant knew (or but for its reckless indifference would have known) prior to agreeing to supply electricity to Plaintiff and other customers that it would be unable or unwilling to provide the savings and/or competitive rate that it agreed/promised to provide.

19.  Defendant knew (or but for its reckless indifference would have known) prior to

---

[1] As the Terms of Service make clear, while the "generation prices and charges will be set by IDT Energy. The Public Utility Commission regulates distribution prices and services. The Federal Energy Commission regulates transmission prices and services." The regulation by the PUC and the FEC are common to Defendant and each of its competitors and does nothing to explain Defendant's failure to provide the pricing it promised. Defendant's pricing is not regulated by anything except the free-market and the broken promises it made to consumers like Plaintiff.

agreeing to act as Plaintiff's and other customer's agent/power of attorney in acquiring sufficient energy supplies to meet Plaintiff's and other customer's needs in the energy supply market that Defendant would be incapable, unable or unwilling to timely, skillfully, knowledgeably, reliably and/or honestly make the necessary and/or appropriate energy purchases to provide the savings and/or competitive price that they contracted/promised to provide.

20. It is clear that Plaintiff and other customers on the one hand and Defendant on the other did not deal with each other on equal terms due to Defendant's purported skill and experience in purchasing electric energy supplies timely, skillfully, knowledgably, reliably, honestly and efficiently in the open market and Plaintiff and other customers depended on and trusted Defendant to do so.

21. By making promises it did not intend on honoring and engaging in unfair dealings, Defendant subverts the consumer-friendly purpose of the deregulation of utilities in Pennsylvania and prevent their customers from receiving the benefits they were promised by Defendant.  In reality, most customers would be far better off staying with their local utilities or another supplier rather than switching to IDT.

## **FACTUAL ALLEGATIONS REGARDING ANTHONY FERRARE**

22. After viewing the company's advertisements and receiving numerous telephone marketing calls from IDT Energy representatives Plaintiff Anthony Ferrare, in or around August 2013, agreed to move to IDT Energy as his electricity supplier.  IDT Energy accepted and Mr. Ferrare began receiving electricity from IDT Energy on or about September 14, 2013.  Mr. Ferrare was billed by IDT Energy for the next few months, and the rate gradually crawled higher, gradually passing by a very large margin the rate charged by Penelec (the old monopoly).  The comparison is as follows:

    (a)    September 14, 2013 to October 15, 2013- $0.0725 per Kwh: Penelec  rate for the same time period was $0.0805 per Kwh;

    (b)    October 16, 2013 to November 14, 2013- $0.0725 per Kwh: Penelec rate for

        the same time period was $0.0805 per Kwh;

(c)     November 15, 2013 to December 13, 2013- $0.0948 per Kwh: Penelec rate for the same time period was $0.0765 per Kwh;

(d)     December 14, 2013 to January 15, 2014- $0.0908 per Kwh: Penelec rate for the same time period was $0.0717 per Kwh; and

(e)     January 16, 2014 to February 12, 2014- $0.2303 per Kwh: Penelec rate for the same time period was $0.0717 per Kwh; (IDT Energy charged Plaintiff over 3 times the amount that he would have paid with Penelec)

23. IDT Energy ultimately charged Mr. Ferrare $0.2303 per Kwh which was $0.1586 per Kwh more than what he would have paid had he kept his service with Penelec for the same time period.

24. In total, from September 2013 until March 2014, IDT Energy overcharged Mr. Ferrare by hundreds of dollars as compared to Penelec.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.

### A. Class Definition(s)

26. The (b)(2) Injunctive Relief Class consists of: All persons in the Commonwealth of Pennsylvania who contracted with Defendant to act as their electric supplier.

27. Excluded from the Class(es) are: Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate families and the presiding judge(s) in this case and his, her or their immediate family.

7

### B. Numerosity

28. At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members number in the thousands and are so numerous that joinder of all members is impracticable. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery. By removing this case, Defendant has admitted to this allegation.

### C. Commonality

29. There are questions of law or fact common to the class, including at least the following:

What the rate term was with its contract with its customers for the supply of electric services;

   a. What the rate term was with its contract with its customers;

   b. Whether Defendant breached the rate term of its contract in setting the actual rate charged to its customers;

   c. Whether Defendant breached the covenant of good faith and fair dealing in making the promises it did regarding the promised rate;

   d. Whether Defendant breached the covenant of good faith and fair dealing in setting the actual rate charged; and

   e. Whether and the amount to which Plaintiff and other members of the Class have been damaged?

### D. Typicality

30. Plaintiff has the same interests in this matter as all other members of the Class, and his claims are typical of all members of the class.

### E. Adequacy

31. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class members and does not have interests adverse to the Class.

**F.  The Prerequisites of Rule 23(b)(2) are Satisfied**

32. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final injunctive and equitable relief appropriate with respect to the Class as a whole.

33. The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

34. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.

35. Defendant's systemic policies and practices make declaratory relief with respect to the class as a whole appropriate.

**G.  The Prerequisites of Rule 23(b)(3) are Satisfied**

36. This case satisfies the prerequisites of Fed.R.Civ.P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions

is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

## CAUSES OF ACTION

## COUNT I

### (BREACH OF CONTRACT)

37. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein.

38. Defendant entered valid and enforceable agreements with Plaintiff and the Class Members, which included terms relating to the rate to be charged for the electricity sold by Defendant.

39. Defendant breached their agreements with Plaintiff and the Class Members by charging rates that did not meet the contractual obligation to offer a price that is keyed to market factors and otherwise competitive.

40. Defendant's breach of its agreement caused harm to Plaintiff and the Class Members.

## COUNT II

### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

41. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein.

42. Defendant created in Plaintiff and the Class Members the reasonable expectation that Defendant would set rates that were competitive in the marketplace and were otherwise keyed to market factors.

43. Defendant was entrusted by Plaintiffs and the Class Members to purchase electricity at competitive rates in the wholesale marketplace and, in turn, resell electricity to them at competitive rates in the retail marketplace.

44. In violation of its duty to act in good faith under its agreement with the Plaintiff and the Class Members and by its course of unfair dealing with Plaintiff and the Class Members set forth above, Defendant caused Plaintiff and the Class Members harm.

## COUNT III

## (DECLARATORY RELIEF)

45. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein.

46. Defendant has acted in a uniform manner under the standard and common terms relating to the price of its electricity it has agreed to with Plaintiff and the Class Members.

47. Defendant has acted or refused to act on grounds that apply generally to the declaratory relief of Plaintiff and the Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed.R.Civ.P. 23(b)(2).

48. Plaintiff and the Class Members seek a declaration of Defendant's obligations to them under the agreement regarding the pricing of its electricity.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

    a) Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

    b) Designating Plaintiff as representative of the Class and his counsel as Class counsel;

c) Entering judgment In favor of Plaintiff and the Class and against Defendant;

d) Awarding Plaintiff and Class members their individual damages including interest thereon;

e) Issuing appropriate declaratory and injunctive relief to declare the rights of Plaintiff and the Class Members ; and

f) Granting such further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues.

Dated: October 1, 2014                                                                 Respectfully Submitted,

**SEEGER WEISS LLP**

/s/ Jonathan Shub
Jonathan Shub, Esquire
Identification No: 53965
1515 Market St., Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300
Fax: (215) 851-8029

Troy M. Frederick, Esquire
**Marcus & Mack, P.C.**
Identification No: 207461
57 South Sixth Street
Indiana, PA 15701
Phone: (724) 349-5602
Fax: (724) 349-8362

*Attorneys for Plaintiff*