# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY FERRARE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IDT ENERGY, INC.<br><br>Defendant. | No.: 2:14-cv-04658-AB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT IDT ENERGY INC.'S MOTION TO STAY OR ALTERNATIVELY TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT #19**<br><br>**JURY TRIAL DEMANDED** |

Jonathan Shub, Esquire
**SEEGER WEISS LLP**
Identification No: 53965
1515 Market St., Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300
Fax: (215) 851-8029

Troy M. Frederick, Esquire
**Marcus & Mack, P.C.**
Identification No: 207461
57 South Sixth Street
Indiana, PA 15701
Phone: (724) 349-5602
Fax: (724) 349-8362

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

Page

I.   COUNTER PRELIMINARY STATEMENT.................................................................... 1

II.  FACTUAL BACKGROUND ..........................................................................................4

III. ARGUMENT ................................................................................................................4

   A. IDT's Motion to Stay Should
      Be Denied As The Doctrine of Primary
      Jurisdiction Does Not Apply To The
      Instant Action …………………………………………………………………..4

   B. IDT's Motion to Dismiss in the
      Alternative Should Be denied for the Following Reasons:………………………10

      I.   Defendant's Motion To Dismiss Plaintiff's
           Claim For Breach Of Contract Should Be Denied
           Because Plaintiff Set Forth Sufficient Facts Alleging
           That Defendant IDT Breached Its Contract With
           Plaintiff And The Proposed Class…………………………………….…12

      II.  Defendant's Motion To Dismiss Plaintiff's Breach
           Of The Covenant Of Good Faith And Fair Dealing
           Should Be Denied Because: Plaintiff Has Sufficiently
           Pleaded That Defendant IDT Breached Its Contract With
           Plaintiff And The Proposed Class; Plaintiff Pleaded That
           A Special Relationship Existed Between The Parties;
           And No Express Contractual Provision Covers The
           Subject Matter Of Plaintiffs Claim………………………………..…..14

      III. Defendant's Motion To Dismiss Plaintiff's Claim For
           Declaratory Relief Should Be Denied Because Plaintiff
           Has Standing To Bring The Claim And Because Plaintiff
           Alleged Facts Sufficient To State A Claim Against IDT
           In The First Amended Complaint………………………………………..18

IV.  CONCLUSION…………………………………………………………...…………..22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aetna Life Insurance Co. v. Haworth,*
  300 U.S. 227 (1937)……………………………………………………………………21

*Ashcroft v. Iqbal,*
  129 Sup. Ct. 1937  (2009)…………………………………………………………10, 11

*Balanyi v. Local 1031, Int'l Bhd. of Elec. Workers AFL-CIO,*
  374 F.2d 723 (7th Cir. 1967)…………………………………………………………..19

*Baykeeper v. NL Indus., Inc.,*
  660 F.3d 686 (3d Cir. 2011)……………………………………………………………4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)………………..………………………………………………10, 11

*Benchmark Grp., Inc. v. Penn Tank Lines, Inc.,*
  612 F. Supp. 2d 562 (E.D. Pa. 2009)………………..………………………………14

*Bowers v. City of Philadelphia,*
  2006 U.S. Dist. LEXIS 71914, 2006 WL 2818501(E.D. Pa. Sept. 28, 2006)………………20

*Chrysler Credit Corp. v. B.J.M., Jr.,*
  834 F. Supp. 813 (E.D. Pa. 1993)………………………………..………………………16-17

*Cincinnati Ins. Co. v. Holbrook,*
  867 F.2d 1330 (11th Cir. 1989)…………..………………………………………………18-19

*City of Pittsburgh v. Pa. Pub. Util. Comm'n.,*
  43 A.2d 348 (Pa. Super 1945)…………………………………………………………..5

*Conley v. Gibson,*
  335 U.S. 41 (1957)…………..………………………………………………………11

*Contrans, Inc. v. Ryder Truck Rental, Inc.,*
  836 F.2d 163 (3d Cir. 1987)……………………………………………………………12

*Corestates Bank, N.A. v. Cutillo,*
  723 A.2d 1053, 1058 (Pa.Super.1999)………………………………………………………12

*Davis v. Romney*,
   490 F.2d 1360, 1370 (3d Cir. 1974)……………………………………………………19

*Delmarva Power & Light Co. v. Pa. Pub. Util. Comm'n*,
   870 A.2d 901 (Pa. 2005)…………………………………………………………………5

*Fed. Ins. Co. v. McAnally*,
   No. CIV. A. 91-7676 F, 1992 WL 245871,
   at *2 (E.D. Pa. Sept. 22, 1992) aff'd, 993 F.2d 876 (3d Cir. 1993) …………………………13

*Feingold v. Bell*,
   383 A.2d 791 (Pa. 1977)……………………………………………………………………5, 9

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*,
   12-CV-02441, 2013 WL 2177974 (D.N.J. May 20, 2013)…………………………………19

*Franklin Sugar Ref. Co. v. Howell*,
   274 Pa. 190, 118 A. 109 (1922)…………………………………………………………..13

*Hellmann v. Kercher*,
   No. 07–1373, 2008 WL 1969311 (W.D.Pa. May 5, 2008)…………………………………11

*Hishon v. King & Spaulding*,
   467 U.S. 69 (1984)……………………………...…………………………………………10

*Hughes v. Pa. State Police*,
   619 A.2d 390 (Pa. Cmwlth 1992)……………………………………………………………5

*Hullett v. Towers, Perrin, Forster & Crosby, Inc.*,
   38 F.3d 107 (3d Cir.1994)………...………...........................................................12

*Kamco Industrial Sales, Inc. v. Lovejoy, Inc.*,
   779 F.Supp.2d 416 (E.D.Pa. 2011)……………………………………..…………………14

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir.1993)………………………………………….…………………………10

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir.2000)……………………………………………………………………10

*Maryland Casualty Co. Pacific Coal & Oil Co.*,
   312 U.S. 270 (1941)…………………………………….……………………………………21

*Montanez v. HSBC Mortg. Corp. USA*,
     876 F.Supp.2d 504 (E.D.Pa. 2012)……………………………………………...14-15

*Murphy v. Dusquesne Univ. of the Holy Ghost*,
     777 A.2d 418 (Pa. 2001)…………………………………….………………………12

*Neitzke v. Williams*,
     490 U.S. 319 (1989)…………………………………………...……………….……..11

*Neuhard v. Range Resources-Appalachia, LLC*, --- F.SUpp.2d ---
     2014 WL 1745896 (W.D.Pa. Apr. 30, 2014)……………………...………….………12-13

*Pennsylvania Supply, Inc. v. Am. Ash Recycling Corp. of
     Pennsylvania*, 895 A.2d 595 (Pa. Super. 2006) ……………………….………….…………12

*Prier v. Steed*,
     456 F.3d 1209 (10th Cir. 2006)………………………………….……………………… 19

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*,
     344 U.S. 237 (1952)…………………………………………………………………19

*Roberts v. Martorano*,
     235 A.2d 602 (Pa. 1967)………………………………………...………………….……5

*Sheinman Provisions, Inc. v. Nat'l Deli, LLC*,
     2008 U.S. Dist. LEXIS 54357, 2008 WL 2758029 (E.D. Pa. July 15, 2008)………………15

*Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)…………………………………………...12

*Sykes v. Nationwide Mutual Insurance Company*,
     413 Pa. 640, 198 A.2d 844 (1964)………………………………….………………..13

*Synthes, Inc. v. Emerge Med., Inc.*, No. CIV.A.
     11-1566, 2014 WL 2579286, at *46 (E.D. Pa. June 5, 2014)……………………………12, 13

*Tamco Corp. v. Fed. Ins. Co. of New York*,
     216 F. Supp. 767, 771 (N.D. Ill. 1963)……………………………………...……18

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*,
     395 F.3d 1324, 1331 (Fed.Cir.2005)……………………………………………………21

*Walker Process Equip., Inc. v. FMC Corp.*,
     356 F.2d 449, 451 (7th Cir. 1966)………………………………………...………19

**STATUTES**

Declaratory Judgment Act, 28 U.S.C. § 2201……………………………………………19, 21

66 Pa.C.S. §§ 101, *et seq*……………………………………………………………….5

66 Pa.C.S. §§ 102……………………………………………………………………1, 5, 7

66 Pa.C.S. § 2806………………………………………………………………………….5

66 Pa.C.S. § 2806(a)………………………………………………………………6, 8

66 Pa.C.S. § 2809……………………………………………………………………1, 5, 7, 9

66 Pa.C.S. § 2810……………………………………………………………………1, 5, 7, 9

**RULES**

Fed.R.Civ.P. 8(a)…………………………………………………………..………11

Fed.R.Civ.P. 12(b)(6)…………………………………………………………..10-11

**OTHER AUTHORITIES**

*Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*,
   Pennsylvania Public Utility Commission, Docket No. C-2014-2427657,
   2014 WL 4374209 (Aug. 20, 2104)…………………………………………...1-2, 5-9

*Joseph Nadav v. Respond Power LLC*, 2014 WL 4374216 (Aug. 14, 2014)…………………..4

Restatement (Second) of Contracts § 205…………………………………………14-15

## I.   COUNTER PRELIMINARY STATEMENT

This is a proposed class action brought by Plaintiff on behalf of himself and other similarly situated customers of Defendant IDT ("Defendant or IDT").  Defendant has and continues to promise customers competitive market-based rates and savings on their electric energy bills if they switch from their local utilities or other energy suppliers to IDT.  However, these promises are hollow and quickly broken after the initial "teaser" rate expires.  Instead, Defendant routinely increases its customers' rates well above the market rate, sometimes by as much as 300%.  Thus, a typical customer loses hundreds or even thousands of dollars per year as a result of the switch to IDT as its energy provider.  Defendant's acts and omissions constitute breach of contract and/or a breach of the covenant of good faith and fair dealing, and warrant declaratory relief.

Defendant argues that, "this case should still be stayed under the doctrine of primary jurisdiction because the claims alleged in the Amended Complaint implicate the Pennsylvania Public Utility Commission's ("PUC") regulation of electric generation suppliers ("EGSs"). (Dkt. 19-1 at 6).  Defendant relies on the Doctrine of Primary Jurisdiction which, according to IDT, "requires judicial abstention in cases where the protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  (Dkt. 19-1 at 10).  That position is meritless.  The PUC has already determined that it "does not have authority to regulate an EGS's rates, such as IDT's, because EGSs are not included in the definition of public utilities subject to Commission regulation as defined by the Public Utility Code, except in limited purposes as described in Sections 2809 and 2810.66 Pa.C.S. §§ 102, 2809 (requirements for electric generation suppliers), 2810 (revenue-neutral reconciliation)."  *Commonwealth of Pennsylvania, et al. v. IDT*

*Energy, Inc.*, Pennsylvania Public Utility Commission, Docket No. C-2014-2427657, 2014 WL 4374209 (Aug. 20, 2104).

The PUC further determined that it does not have jurisdiction over breach of contract claims. *Id*.   As such, IDT's request for a stay should be denied as the Doctrine of Primary Jurisdiction is inapplicable.

Regarding IDT's Motion to Dismiss in the Alternative, IDT first argues that Plaintiff's claim for breach of contract (Count I) should be dismissed because Plaintiff fails to allege facts showing that IDT breached the terms of the parties' agreement.  Plaintiff has alleged sufficient facts to establish that IDT has breached its contract with Plaintiff and the Proposed Class.  Plaintiff alleged that IDT entered into a contract wherein Plaintiff agreed to receive his electric generation supply service from IDT, and IDT contracted to deliver said services and savings by basing its rates competitively on the market and IDT breached the contract by failing to do so. (Dkt. 13 at ¶¶ 1, 5, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 29, 37, 38, 39 and 40).  Plaintiff has alleged IDT breached the contract by charging a rate based on impermissible factors.  To be clear, Plaintiff's breach of contract claim goes beyond merely alleging that the rates charged do not correspond to IDT's Terms of Service.  Rather, Plaintiff has alleged that IDT could have delivered the savings but opted not to.  (Dkt. 13 at ¶¶ 18, 19 and 21).

IDT next argues that "Plaintiff's claim for breach of the covenant of good faith and fair dealing (Count II) should be dismissed because: (1) a claim for breach of the covenant of good faith and fair dealing requires a plaintiff to allege facts showing all of the elements of a breach of contract claim; (2) such a claim can succeed only in situations where the parties have a special relationship that does not exist here; and (3) there can be no implied covenant as to any matter specifically covered by the parties' agreement." (Dkt. 19-1 at 7).  First, as discussed above, Plaintiff

clearly alleged sufficient facts showing all of the elements of a breach of contract.  Second, Plaintiff explains the special relationship between himself, the Proposed Class and IDT in Paragraph 20 of the *First Amended Complaint*: "It is clear that Plaintiff and other customers on the one hand and Defendant on the other did not deal with each other on equal terms due to Defendant's purported skill and experience in purchasing electric energy supplies timely, skillfully, knowledgably, reliably, honestly and efficiently in the open market and Plaintiff and other customers depended on and trusted Defendant to do so." (Dkt. 13 at ¶20).  There is a special relationship between IDT and Plaintiff and the Proposed Class that rendered Plaintiff and the Proposed Class completely dependent on IDT to purchase electric energy supplies on the open market with the single purpose of saving the Plaintiff and the Proposed Class money on their electric bill.  Third, Plaintiff's claim for breach of the covenant of good faith and fair dealing relates to IDT's failure to honor its obligation to provide the promised savings and competitive rates, included in Count II of Plaintiff's *First Amended Complaint* via incorporation, which were not reflected in IDT's Terms of Service.

Finally, IDT argues: "Plaintiff's claim for declaratory relief (Count III) should be dismissed because: (1) Plaintiff lacks standing to bring a claim for declaratory relief; and (2) Plaintiff fails to allege facts sufficient to satisfy the pleading requirements for his underlying claims.  Plaintiff disagrees.  Plaintiff has standing to bring a claim for declaratory relief, due to the very nature of the harm being one of short duration and has alleged facts sufficient to satisfy the pleading requirements for the underlying claims as discussed herein.

For the above stated reasons, which are explained in greater detail below, Plaintiff respectfully requests that this Court deny IDT's Motion to Stay and alternately to dismiss Plaintiff's First Amended Complaint.

## II.    FACTUAL BACKGROUND

For the purposes of IDT's instant Motion, Plaintiff does not dispute IDT's recitation of the procedural history of this action.

## III.    ARGUMENT

**A. IDT's Motion to Stay Should Be Denied As The Doctrine of Primary Jurisdiction Does Not Apply To The Instant Action**.

IDT's Motion to Stay should be denied as the Doctrine of Primary Jurisdiction does not apply.  Although there is no fixed formula for application of the Doctrine, district courts typically look to the following four factors.  Those factors are: (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made. *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).

The first factor the Court should consider in determining whether the primary jurisdiction doctrine applies is whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise.  The questions at issue relate to a simple breach of contract of claim which is within the conventional experience of this Court.  Further, breach of contract claims are not within the PUC's particular field of expertise as the PUC does not have jurisdiction over private parties' breach of contract claims. *Joseph Nadav v. Respond Power LLC*, 2014 WL 4374216 (Aug. 14, 2014).  As such, the first factor the Court must consider mitigates in favor of Plaintiff.

The second factor the Court should consider is whether the question at issue is particularly within the agency's discretion.  "To begin, it is well settled that the Commission may

not exceed its jurisdiction and must act within it." *City of Pittsburgh v. Pa. Pub. Util. Comm'n.*, 43 A.2d 348 (Pa. Super 1945) (*Pittsburgh*).  Jurisdiction may not be conferred by the parties where none exists.  *Roberts v. Martorano*, 235 A.2d 602 (Pa. 1967) (*Roberts*).  Subject matter jurisdiction is a prerequisite to the exercise of the power to decide a controversy.  *Hughes v. Pa. State Police*, 619 A.2d 390 (Pa. Cmwlth 1992) (*Hughes*).  As a creation of the legislature, the Commission possesses only the authority that the state legislature has specifically granted to it in the Public Utility Code.  66 Pa.C.S. §§ 101, *et seq.*  Its jurisdiction must arise from the express language of the pertinent enabling legislation or by strong and necessary implication therefrom. *Feingold v. Bell*, 383 A.2d 791 (Pa. 1977) (*Feingold*); *Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*, Pennsylvania Public Utility Commission, Docket No. C-2014-2427657, 2014 WL 4374209 (Aug. 20, 2104).

"Section 2806 of the Public Utility Code provides that 'the generation of electricity shall no longer be regulated as a public utility service or function, accept as otherwise provided for in this chapter.' *66 Pa.C.S. § 2806*.  Furthermore, the Commission does not have authority to regulate an EGS's rates, such as IDT's, because EGSs are not included in the definition of public utilities subject to Commission regulation as defined by the Public Utility Code, except in limited purposes as described in Sections 2809 and 2810.  *66 Pa.C.S. §§ 102, 2809* (requirements for electric generation suppliers), 2810 (revenue-neutral reconciliation); *see also*, *Delmarva Power & Light Co. v. Pa. Pub. Util. Comm'n*, 870 A.2d 901 (Pa. 2005) (noting that the Commission could forbear from regulating EGSs pursuant to Section 2809(e) of the Public Utility Code if it were determined that the requirements of Section 2809 were unnecessary due to competition among EGSs)." *Id*.

In the instant matter, IDT is in the unenviable position of arguing both sides of this jurisdictional issue depending on which tribunal it is before.  Before this Court IDT argues that the PUC has primary jurisdiction over this matter and as such this action should be stayed.  (Dkt. 19-1 at 9-14).  However, before the PUC[1] IDT argued that the PUC does not have jurisdiction over the prices it charges its customers.  Specifically, IDT argued in its PUC filing that:

> While the Choice Act provides the Commission with authority to regulate EGSs for licensing and similar purposes, *it clearly mandates that the Commission has no authority to regulate electricity generation prices offered by EGSs*. See 66 Pa.C.S. § 2806(a). The Commission has reiterated this principle time and again. The Commission has recognized that: "This is as clear a mandate from the General Assembly as any government agency could hope to receive.  There is no equivocation - all Pennsylvania electric customers shall have the ability to choose their electric generation supplier, *and the Commission does not have any authority over the generation of electricity, which necessarily includes the specific price charged to end-user customers*." (Emphasis added).

(*Brief Of IDT Energy, Inc. In Response To The Petition For Interlocutory Review And Answers To Material Questions Of The Office Of Attorney General And Office Of Consumer Advocates*, attached hereto as Exhibit "A"), at pp. 9-10.  Plaintiff's claims are precisely based on what price IDT charged end users for its services.

IDT attempts here to mischaracterize Plaintiff's claims so that they appear to fall within the purview of the PUC.  (Dkt. 19-1 at 6).  IDT states that the issue of IDT's compliance with the provisions of its Disclosure Statement/Terms of Service is currently before the PUC.  *Id*.  However, the PUC summarized the relative positions of the parties before it as follows:

> The Joint Complainants conclude Count VI ["*Prices Nonconforming to Disclosure Statement*"] by averring that the prices do not conform to the variable rate pricing provision in

---

[1] http://www.puc.state.pa.us/about_puc/consolidated_case_view.aspx?Docket=C-2014-2427657 is the link to all filings in the matter of *Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc., Pennsylvania Public Utility Commission*, Docket No. C-2014-2427657.

IDT's Disclosure Statement.  *In its Preliminary Objection, IDT argued that Count VI does not set forth any averments that would lead to a conclusion that IDT's prices did not conform to its Disclosure Statement.  IDT then argued that, as an Electric Generation Supplier (EGS), it is not subject to the Commission's regulations, except in limited circumstances, and therefore Count VI should be stricken as impertinent matter.*  In their Answer to the Preliminary Objection, the Joint Complainants argued that EGSs are considered public utilities for certain purposes relating to standards and billing practices.  The Joint Complainants further averred that they have stated legally sufficient causes of action relating to, among other things, deceptive marketing practices. *For the reasons discussed further below, IDT's Preliminary Objection will be granted and Count VI of the Complaint will be stricken.* (Emphasis added).

*Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*, Pennsylvania Public Utility

Commission, Docket No. C-2014-2427657, 2014 WL 4374209 (Aug. 20, 2104).


The PUC explained its rationale for striking Count VI of the Joint Complaint as follows:

> The Joint Complainants argue in their Answer to IDT's Preliminary Objection that the Commission's regulations allow for regulation of EGS billing practices. Citing, 52 Pa.Code § 54.43(f).  Billing practices, however, are not at issue in Count VI.  *Count VI of the Complaint avers that IDT charged its variable rate customers prices at least as high as $0.34 per kwh for electricity and that such prices were not reflective of the cost to serve residential customers.* The Joint Complainants then conclude that the aforementioned prices do not conform to the variable rate pricing provision of IDT's Disclosure Statement.  *The gravamen of Count VI is clearly the rate at which IDT charged its variable rate customers, not conformance of those rates with the variable rate pricing provisions in the Disclosure Statement or billing practices.* (Emphasis added).  *Id.*

The PUC then concluded that it "does not have authority to regulate an EGS's rates, such as

IDT's, because EGSs are not included in the definition of "public utilities" subject to Commission

regulation as defined by the Public Utility Code, except in limited purposes as described in Sections

2809 and 2810.66 Pa.C.S. §§ 102, 2809 (requirements for electric generation suppliers), 2810

(revenue-neutral reconciliation)."  *Id.*  IDT argued to the PUC in its preliminary objections that "Section 2806(a) of the Public Utility Code provides that 'while the Electricity Generation Customer Choice and Competition Act provides the Commission with authority to regulate EGSs for licensing and similar purposes, *it clearly mandates that the Commission has no authority to regulate electricity generation prices offered by EGSs*.'"  (Emphasis added)  *Id.*  IDT went on to argue in its Preliminary Objections before the PUC that "[i]t is well settled that the Commission does not have the authority to regulate EGS prices.  Therefore, even if it were true that 'IDT's prices were not reflective of its costs to serve customers' as OCA alleges (an allegation that IDT strongly denies), such pricing would not be a violation of the Public Utility Code or any of the Commission's regulations or Orders."  *Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*, Pennsylvania Public Utility Commission, Docket No. C-2014-2427657, 2014 WL 4374209, (Aug. 20, 2104) (attached hereto as Exhibit "B").

IDT's obvious litigation strategy is to argue to the PUC that it does not have jurisdiction over the complaints brought against it and to argue to this Honorable Court that the PUC has jurisdiction over the claims brought against it.  The goal for IDT is to work itself into a position where it has convinced each tribunal that neither has jurisdiction to hear the claims brought against it; thereby, effectively leaving its victims in the dark.  IDT's position apparently is that, because Pennsylvania deregulated the energy market, it can charge its customers whatever rate it wants without consequence regardless of the contracts and promises it has made.  As the PUC held, the "Commission does not have any authority over the generation of electricity, which necessarily includes the specific price charged to end-user customers."  Exhibit "B" (*Preliminary Objections of Respondent, IDT Energy, Inc*. at ¶ 21).[2]

---

[2] The PUC had the opportunity to issue an almost identical ruling, on August 14, 2014, just six days before it issued the IDT order, regarding a complaint filed against Respond Power, LLC.  In that opinion the PUC stated:

For the reasons discussed above, it is clear that the second factor mitigates in favor of Plaintiff as well.

The third factor also favors Plaintiff. It is unlikely in this instance that there is any danger of inconsistent rulings. The PUC has already determined the specific issue of whether it has jurisdiction over the rates IDT charges its customers as well as whether it has jurisdiction to hear private breach of contract claims, and in both instances, the PUC has held that it does not have jurisdiction. *Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*, Pennsylvania Public Utility Commission, Docket No. C-2014-2427657, 2014 WL 4374209, (Aug. 20, 2104). Because the PUC has determined that it does not have jurisdiction over Plaintiff's claims, the PUC will not be determining the same issues that Plaintiff has raised in his *First Amended Complaint*. As such, the third factor favors Plaintiff.

---

Viewing the complaint in this case in the light most favorable to the Complainant, and City Blue, the Respondent supplied electric generation supply service to City Blue at 2050 Byberry Road. The Respondent increased the rate it charged to the Complainant from .13 to .34 per kwh for electricity. The rate increase placed a financial burden on the Complainant and the Complainant had to make a payment arrangement for the bills.

Accepting these facts alleged in the complaint as true for purposes of disposing of its preliminary respondent contends that the Commission may not regulate the rates that the Respondent charged the Complainant for electric generation supply service since it is not a public utility except for the limited purposes of 66 Pa.C.S. §§ 2809 and 2810. Therefore, the Commission has no jurisdiction over the Respondent to the extent that the Complainant contends that the Respondent has charged an unreasonable, unjust or illegal rate for electric generation supply service. Since the Commission lacks the jurisdiction to regulate rates charged for electric generation supply service, it lacks the authority to order a refund or credit to the Complainant. I agree. (Emphasis added).

[]

Underlying this discussion in the Variable Rate Order is the unstated acknowledgement by the Commission that it does not have jurisdiction to regulate the rates charged by an EGS, such as the Respondent, or order a refund of unreasonable rates. Rather, these rates are governed by private contract between the EGS and the customer. The Commission lacks the jurisdiction to rule on the parties' responsibilities under a private agreement or the authority to award damages under that agreement. *Feingold v. Bell Tel. Co. of PA.*, 383 A.2d 791 (Pa. 1977). Since the Commission lacks jurisdiction to regulate the rates charged by the Respondent or rule on parties' responsibilities under their private agreement, the Commission cannot order the Respondent to refund any charges for electric generation supply service to the Complainant or City Blue. See *Nadav*, 2014 WL 4374216 (Aug. 14, 2014). (Emphasis added).

The final factor to consider is whether a prior application to the agency has been made.  In this instance a prior application to the agency has been made.  However, because the PUC has made the determination that it lacks jurisdiction over Plaintiff's claims, the application is of no consequence and this final factor must also favor the Plaintiff.

In conclusion, it is clear that the PUC has considered the scenario presently before this Court and has decided in multiple cases, one of which directly involves IDT, that it does not have jurisdiction over the subject matter of Plaintiff's *First Amended Complaint*.  For the reasons set forth above, Plaintiff respectfully requests that this Court deny IDT's Motion to Stay as it is this Court that has exclusive jurisdiction over Plaintiff's Claims and not the PUC.

**B.  IDT's Motion to Dismiss Should Also Be Denied**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). In ruling on such a motion, the court primarily considers the allegations of the pleading. *Kost*, 1 F.3d at 183.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.2000).

 A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

As one district court explained "[i]n considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07–1373, 2008 WL 1969311 at * 3 (W.D.Pa. May 5, 2008). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests,'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief.  *See Hellmann*, 2008 WL 1969311 at *3.  Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory.  *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 662 at 679 (quoting Fed.R.Civ.P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and fact finding."  *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id*. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id*. at 327.

I.  **Defendant's Motion To Dismiss Plaintiff's Claim For Breach Of Contract Should Be Denied Because Plaintiff Set Forth Sufficient Facts Alleging That IDT Breached Its Contract With Plaintiff And The Proposed Class.**

"A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Pennsylvania Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600 (Pa. Super. 2006) (citing *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.1999)).  In assessing the existence of a contract and the related duties, the Court is to determine the parties' intent:  "A court's purpose in examining a contract is to interpret the intent of the contracting parties, as objectively manifested by them." *Synthes, Inc. v. Emerge Med., Inc.*, No. CIV.A. 11-1566, 2014 WL 2579286, at *46 (E.D. Pa. June 5, 2014) (citing *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir.1994)).  While not every term of a contract must be stated in complete detail, every element must be specifically pleaded. *Pennsylvania Supply*, 895 A.2d at 600.

The Court is guided by several principles when determining the shared intent of the parties. First, all relevant contract terms might not be expressly set forth: "specific, express written language is not necessary for a particular contractual intent to exist in an agreement.  Rather, it is common for the intent of the contracting parties to be inherent in the totality of their contract." *Murphy v. Dusquesne Univ. of the Holy Ghost*, 777 A.2d 418, 432 (Pa. 2001).  Second, the "commonly accepted and plain meaning" of words (like "market related factors") is to be used. *Neuhard v. Range Resources-Appalachia, LLC*, --- F.SUpp.2d ---, 2014 WL 1745896, *4 (W.D.Pa. Apr. 30, 2014) (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)).  Third, the Court "must consider the text as a whole when construing the language's operative effect." *Id.*, at *3 *citing *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987)).  Finally,

"every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates ... and hence the language used in a contract will be construed according to its purport in the particular business." *Id.*, at *4 (quoting *Franklin Sugar Ref. Co. v. Howell*, 274 Pa. 190, 118 A. 109, 110 (1922)).

Additionally, any agreement is to be construed against the party that wrote it. *Synthes*, 2014 WL 2579286, at *47. This is particularly important in understanding unilaterally drafted agreements like that prepared by IDT. *Fed. Ins. Co. v. McAnally*, No. CIV. A. 91-7676 F, 1992 WL 245871, at *2 (E.D. Pa. Sept. 22, 1992) aff'd, 993 F.2d 876 (3d Cir. 1993) (noting in the context of insurance policies that "the policy behind interpreting ambiguous language . . . in the manner most favorable to the insured is to protect insurance purchasers from contracts of adhesion in which 'ambiguous language [is used] to entice insurance buyers, only to drop them into a pit of non-recoverability when claims are made....'") (quoting *Sykes v. Nationwide Mutual Insurance Company*, 413 Pa. 640, 198 A.2d 844, 845 (1964)).

As alleged, IDT breached the price term in its agreement with Plaintiff  by neglecting "market" factors to set a price that was not "competitive." The Terms of Service make clear that the "market" is the repeated touchstone of the "Price" and one of the few Price factors that are not set by governmental regulators or authorities. The Terms of Service state that "[t]he price for electric generation sold is established on an approximately monthly basis based upon electric generation market pricing as furnished by PJM clearing house, transportation or transmission, and other market and business price related factors." (Dkt. 19-2 at 4). As alleged, Defendant breached this provision by not genuinely considering market factors in setting the rate it charged Plaintiff and the Proposed Class.

Plaintiff respectfully requests that this Court deny IDT's Motion to Dismiss, in the Alternative, Plaintiff's Breach of Contract claim as Plaintiff has alleged sufficient facts in the *First Amended Complaint*.  In the Alternative, Plaintiff respectfully requests leave of Court to amend the *First Amended Complaint*.

> **II.  Defendant's Motion To Dismiss Plaintiff's Breach Of The Covenant Of Good Faith And Fair Dealing Should Be Denied Because: Plaintiff Has Sufficiently Pleaded That Defendant IDT Breached Its Contract With Plaintiff And The Proposed Class; Plaintiff Pleaded That A Special Relationship Existed Between The Parties; And No Express Contractual Provision Covers The Subject Matter Of Plaintiffs Claim.**

"'In Pennsylvania, a covenant of good faith and fair dealing is implied in every contract.' The duty of good faith has been defined as 'honesty in fact in the conduct or transaction concerned.'  Examples of bad faith can include 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.' Courts use this good faith duty as 'an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action.'  Although the precise contours of a party's duty under the covenant vary with the context, good faith generally entails 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562, 583 (E.D. Pa. 2009).

The Covenant of Good Faith and Fair Dealing is a protective and inclusive covenant between the parties to any agreement.  "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."  Restatement (Second) of Contracts § 205 (Restatement § 205); *see Kamco Industrial Sales, Inc. v. Lovejoy, Inc.*, 779 F.Supp.2d 416, 425 (E.D.Pa. 2011) (Pollack, J.) (noting that Restatement § 205 would likely be adopted by the Pennsylvania Supreme Court).  "Good faith performance . . . of a contract emphasizes

14

faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement § 205; *see Montanez v. HSBC Mortg. Corp. (USA*, 876 F.Supp.2d 504, 513 (E.D.Pa. 2012). Defendant breached the Covenant of Good Faith and Fair Dealing by setting prices in contravention of Plaintiff's "justified expectation" that IDT's promise to consider several market factors in setting the price of its energy would lead to prices that were "competitive" in the marketplace, and not double or triple the going rate, and ultimately deliver savings to Plaintiff and the Proposed Class. The need for the Covenant of Good Faith and Fair Dealing is supported and evidenced by Plaintiff's allegations in this matter.

IDT first argues that "Pennsylvania does not recognize a claim for breach of the covenant of good faith and fair dealing as an independent cause of action." (Dkt. 19-1 at 18). However, IDT does not acknowledge that Pennsylvania has repeatedly recognized claims for relief when a defendant breaches the Covenant of Good Faith and Fair Dealing. Plaintiff has sufficiently pleaded the required elements to assert that IDT breached, and continues to breach, the Covenant of Good Faith and Fair Dealing.

"In order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a plaintiff must properly plead the elements of a claim of breach of contract. In other words, a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract other than the covenant of good faith and fair dealing, and that resultant damages were incurred by plaintiff. *Sheinman Provisions, Inc. v. Nat'l Deli, LLC*, 2008 U.S. Dist. LEXIS 54357, 2008 WL 2758029 (E.D. Pa. July 15, 2008).

Paragraph 41 of Count II of the *First Amended Complaint*, *Breach Of The Covenant Of Good Faith And Fair Dealing*, states: "Plaintiff and the Class incorporate by reference each preceding and succeeding paragraphs as though fully set forth herein." (Dkt. 13 at 10). Count I of the *First Amended Complaint* contains Plaintiff's Breach of Contract Claim, which was fully incorporated into Count II. As such, and as discussed above, Plaintiff has successfully pleaded a breach of contract claim. Further, and more importantly, the agreed common purpose and the justified expectations of Plaintiff and the Proposed Class were that IDT would provide competitive market based rates and savings on its electric generation supply services over what Plaintiff and the Proposed Class were paying with other providers. (Dkt. 13 at ¶¶ 1, 15, 18, and 19). To the extent IDT attempts to claim that it never contracted to provide competitive rates and savings to Plaintiff and the Proposed Class on their electric service, the doctrine of good faith and fair dealing imposes that expected term on IDT.

Secondly, IDT argues that "the Pennsylvania courts recognize the duty of good faith only in 'limited situations,' such as when there is a confidential or fiduciary relationship between the parties." (Dkt. 19-1 at 19). However, Plaintiff has pleaded that there was a confidential or fiduciary relationship between IDT and the Plaintiff and the Proposed Class. (Dkt. 13 at 6). The *First Amended Complaint* states: "It is clear that Plaintiff and other customers on the one hand and Defendant on the other did not deal with each other on equal terms due to Defendant's purported skill and experience in purchasing electric energy supplies timely, skillfully, knowledgably, reliably, honestly and efficiently in the open market and Plaintiff and other customers depended on and trusted Defendant to do so." *Id*. This Court has held that "[a] confidential or fiduciary relationship exists when 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of

an over-mastering dominence [sic] on one side, or weakness, dependence or justifiable trust, on the other.  A business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other." *Chrysler Credit Corp. v. B.J.M., Jr.*, 834 F. Supp. 813, 842 (E.D. Pa. 1993).

It is clear from Plaintiff's pleadings that IDT and Plaintiff and the Proposed Class did not deal with each other on equal terms.  The Terms of Service were non-negotiable and IDT purported to maintain an overmastering dominance via its purported ability to competently and wisely purchase energy supplies competitively in the open market.  In short, Plaintiff and the Proposed Class placed their trust in IDT, because of IDT's assertions, to make wise, strategic purchases of an essential element in each of their everyday lives, electricity.  Plaintiff and the Proposed Class surrendered substantial control over the procurement and purchase of electricity which is an essential element of their lives.  For these reasons, Plaintiff did have a confidential and/or fiduciary relationship with IDT and the same was pleaded in the *First Amended Complaint*.

Finally, IDT argues that "as the Third Circuit has recognized, '[t]he covenant of good faith and fair dealing involves an implied duty to bring about a condition or to exercise discretion in a reasonable way,' and '[t]here can be no implied covenant as to any matter specifically covered by the written contract between the parties.'"  (Dkt. 19-1 at 19).  IDT is ignoring the entirety of the *First Amended Complaint*.  Namely, the well pled agreed common purpose and justified expectations of Plaintiff and the Proposed Class that IDT would provide competitive rates and savings on its electric generation supply services over what Plaintiff and the Proposed Class were paying with other providers.  (Dkt. 13 at ¶¶ 1, 15, 18, and 19).  To the extent IDT attempts to claim that it never contracted to provide competitive rates and savings to Plaintiff and

the Proposed Class on their electric service, the doctrine of good faith and fair dealing imposes that expected term on IDT.  Indeed, the only reason Plaintiff and the Proposed Class would have contracted with IDT was so that they could realize competitive rates and savings on their electric bills and that was what IDT promised to deliver.  Plaintiff's claim for breach of the covenant of good faith and fair dealing directly addresses IDT's failure to honor its obligation to provide the promised savings and competitive rates regardless of whether the promise was reflected in the Terms of Service.

Such promises (like the duty to act in good faith and deal fairly) are not at odds with any express term in the Terms of Service.  Defendant did not expressly reserve its right to set rates super-competitively or otherwise hold absolute discretion to set process.  To the extent Defendant argues that it never promised "competitive" rates, savings or assumed any limitation on its obligation to set rates, then the Covenant of Good Faith and Fair Dealing will protect Plaintiff's expectations under Defendant's Terms of Service.

For the above stated reasons, Plaintiff respectfully requests that this Court deny IDT's Motion to Dismiss, in the alternative, Plaintiff's claim for Breach of the Covenant of Good Faith and Fair Dealing.  In the alternative, Plaintiff respectfully requests leave of Court to amend the *First Amended Complaint*.

### III. Defendant's Motion To Dismiss Plaintiff's Claim For Declaratory Relief Should Be Denied Because Plaintiff Has Standing To Bring The Claim And Because Plaintiff Alleged Facts Sufficient To State A Claim Against IDT In The First Amended Complaint.

Defendant moves to dismiss Plaintiff's Declaratory Judgment count despite the fact that the Declaratory Judgment Act ("DJA") "should be liberally construed to effectuate the ends of justice." *Tamco Corp. v. Fed. Ins. Co. of New York*, 216 F. Supp. 767, 771 (N.D. Ill. 1963) (citation omitted); *see also Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir.

1989) (*per curiam*) (the Declaratory Judgment Act "should be exercised liberally in favor of granting such relief in order to accomplish the purposes of the Declaratory Judgment Act."). Given its purpose, the DJA provides district courts with "wide discretion to provide declaratory relief". *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 12-CV-02441, 2013 WL 2177974, at *18 (D.N.J. May 20, 2013). Such broad discretion is provided because the DJA "created a new"[3] and "additional remedy"[4], which is available to interested parties like the Plaintiff in this case. Such remedies are "appropriate even though other remedies are also available"[5], and relief under the DJA is proper either as "the basis of further relief necessary or proper against the adverse party"[6] (*e.g.*, to establish an essential component to liability) or "whether or not further relief is or could be sought" (28 U.S.C. § 2201).

As the Supreme Court has stated, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Pub. Serv. Comm'n*, 344 U.S. at 243. This sense of "fit" is hardly something that can be easily divided from the pleadings, especially when they are to be construed in the light most favorable to the Plaintiff.

Defendant has asked this Court to dismiss Plaintiff's request for relief under the Declaratory Judgment Act, 28 U.S.C. §2201, at the pleading stage, essentially attempting to foreclose declaratory relief entirely. IDT argues: "Plaintiff's claim for declaratory relief (Count III) is also fatally flawed. Simply put, Plaintiff lacks standing to bring a claim for declaratory relief because his allegations relate solely to past conduct, and nowhere in the Amended

---

[3] *Walker Process Equip., Inc. v. FMC Corp.*, 356 F.2d 449, 451 (7th Cir. 1966).
[4] *Balanyi v. Local 1031, Int'l Bhd. of Elec. Workers AFL-CIO*, 374 F.2d 723, 726 (7th Cir. 1967); *see also Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) ("[Declaratory Judgment Act] enlarge[s] the range of remedies available") (citation omitted).
[5] *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974).
[6] *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 245 (1952).

Complaint does he allege that he will be wronged again in a similar way - Plaintiff does not even allege that he is still a customer of IDT." (Dkt. 19-1 at 20). IDT's assertion is simply incorrect.

The present action is substantively similar to *Bowers v. City of Philadelphia*, 2006 U.S. Dist. LEXIS 71914, 2006 WL 2818501(E.D. Pa. Sept. 28, 2006), in which this Court permitted Plaintiffs' request for injunctive and declaratory relief to proceed even though the Plaintiffs had only alleged past harm. At issue in *Bowers* was plaintiffs' motion for class certification. *Id*. *Bowers* involved "allegations by pre-trial detainees in the Philadelphia Prison System ("PPS") of severe prison overcrowding and concomitant dangerous, unhealthy, and degrading conditions." *Id*. In *Bowers* the defendant had argued that "the named plaintiffs lack standing to raise claims for injunctive and declaratory relief because they have alleged only past harm as pre-trial detainees." *Id*. This Court held:

> However, we have already decided that an exception to mootness applies in this case because of the transitory nature of the harm involved in pre-trial detention. Were we to decide that despite this exception, the technical lack of standing made the named Plaintiffs' claims atypical of those they seek to represent, class certification would be impossible in any case involving pre-trial detention *or other harms of short duration*. We are unwilling to reach such a conclusion. Accordingly, Plaintiffs' Motion for Class Certification will be granted. (Emphasis added).

*Id.*

Plaintiff represents to this Court that IDT's Motion to Dismiss Plaintiff's claim for declaratory relief should be denied as the harm suffered by Plaintiff and the Proposed Class is a harm of short duration as once Plaintiff realized that IDT was overcharging him for his electrical service he switched providers to avoid any additional harm, as any rational person would have done. As such, IDT should not benefit from the fact that its excessive rates prompt rational customers to immediately switch to a different electrical provider. It logically follows that IDT

should be prohibited from inflicting excessive rate increases on any future unsuspecting customers.

Further, the price term in the Terms of Service presents an actual controversy.  *The Declaratory Judgment Act* provides that "[i]n a case of actual controversy within its jurisdiction . . . [a court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. § 2201(a).* Paralleling Article III of the Constitution, the Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction over an action for a declaratory judgment." *Teva Pharms. USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324, 1331 (Fed.Cir.2005).  The Court stated in *Aetna Life Insurance Co. v. Haworth*, that the test for determining whether there exists a justiciable "case or controversy" is whether the controversy "is definite and concrete, touching the legal relations of the parties having adverse legal interest." 300 U.S. 227 at 240–41 (1937). The Court explained further in *Maryland Casualty Co. Pacific Coal & Oil Co.*, that the determinative question is "whether the facts alleged, under the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  312 U.S. 270, 273 (1941).

There is no dispute that Plaintiff has standing to sue Defendant – there is a substantial controversy in play, and the parties' interests are sharply adverse.  Defendant argues that because Plaintiff no longer has service with IDT, Plaintiff does not have standing to request declaratory relief.  However, Plaintiff has a live and actual dispute with Defendant about its obligations under its Terms of Service.

Moreover, Defendant remains a competitor in the Pennsylvania electricity marketplace. Plaintiff will inevitably receive solicitations from Defendant and should be able to understand

what Defendant is actually offering in that competitive marketplace.  Additionally, if and when the claims are developed for Defendant's other customers, such declaratory relief will stem from damages that have not yet been incurred.

Finally, IDT argues that "in light of the fact that Plaintiff fails to allege facts sufficient to state any claim against IDT, it logically follows that there is no basis for declaratory relief." (Dkt. 19-1 at 22).  For the reasons set forth above, Plaintiff has sufficiently asserted his Breach of Contract claim as well as a claim for Breach of the Covenant of Good Faith and Fair Dealing. As such, Plaintiff again respectfully Requests that this Court Deny IDT's Motion to Dismiss, in the alternative, Plaintiff's claim for Declaratory Relief.  In the alternative, Plaintiff respectfully requests leave of Court to amend *the First Amended Complaint*.

## IV.   CONCLUSION

For the reasons discussed herein, Plaintiff respectfully requests that this Court deny IDT's Motion to Stay and Motion to Dismiss, in the Alternative.  In the alternative, Plaintiff respectfully requests leave of Court to amend the *First Amended Complaint*.


Dated: November 10, 2014                     Respectfully Submitted:

                                             **SEEGER WEISS LLP**
                                             /s/ Jonathan Shub
                                             Jonathan Shub, Esquire
                                             1515 Market Street, Suite 1380
                                             Philadelphia, PA 19102
                                             Phone: (215) 564-2300
                                             Fax: (215) 851-8029
                                             Email: jshub@seegerweiss.com

**Marcus & Mack, P.C.**
<u>/s/ Troy M. Frederick, Esquire</u>
Marcus & Mack, P.C.
Identification No: 207461
57 South Sixth Street
Indiana, PA 15701
Phone: (724) 349-5602
Fax: (724) 349-8362


*Attorneys for Plaintiff*