IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY FERRARE, on behalf of himself and all others similarly situated, Plaintiff, | : : : : |
| v. | : CIVIL ACTION : NO. 14-4658 |
| IDT ENERGY, INC., Defendant. | : : : |

June  10 , 2015                                                                                   Anita B. Brody, J.

## MEMORANDUM

Plaintiff Anthony Ferrare ("Ferrare") brings this putative class action against Defendant IDT Energy, Inc. ("IDT"). IDT is an electricity generation supplier ("EGS") that provides electricity to Pennsylvania customers. Ferrare, a former IDT customer, alleges that IDT breached its contracts with its customers and the covenant of good faith and fair dealing implicit in those contracts. I exercise diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Presently before me is IDT's Motion to Stay or, Alternatively, Dismiss Plaintiff's Amended Complaint (ECF No. 19). For the reasons discussed below, I will grant IDT's Motion to Stay. I will deny without prejudice IDT's Motion to Dismiss.

I. BACKGROUND[1]

When Pennsylvania deregulated its electricity supply market in the late 1990s, it eliminated the local utility company's monopoly on electricity supply. *See* Electricity Generation Customer Choice and Competition Act ("Electric Competition Act"), 66 Pa. Cons. Stat. §§ 2801 *et seq.* Deregulation unbundled the generation, transmission, and distribution of electricity and enabled consumers to purchase energy from electric generation suppliers

---

[1] For the purpose of deciding IDT's Motion to Stay, the allegations in the Amended Complaint are compared to the allegations raised against IDT before the Pennsylvania Public Utility Commission.

1

("EGSs"). IDT is an EGS that entered the Pennsylvania energy market as a result of deregulation. IDT is licensed by the Pennsylvania Public Utility Commission (the "PUC") to supply electricity to residential customers in Pennsylvania.

Residential customers who purchase electricity from IDT do so pursuant to a contract called the Terms of Service. The Terms of Service provide: "[T]he generation prices and charges will be set by IDT Energy. The Public Utility Commission [PUC] regulates distribution prices and services." Am. Compl. ¶ 3, ECF No. 13. The Terms of Service contain a Disclosure Statement that outlines the method of calculating electric prices: "The price for electric generation sold is established on an approximately monthly basis based upon electric generation market pricing as furnished by PJM clearing house, transportation or transmission, and other market and business price related factors."[2] Ex. A to Decl. of Wayne Stoughton, ECF No. 19-2 at 4 (Terms of Service).

**A. Amended Complaint**

In his Amended Complaint, Ferrare alleges that IDT induced energy consumers to switch to IDT from the local utility or from other energy suppliers by promising competitive, market-based rates and savings on electric energy bills. IDT offered new customers a "teaser" rate, and promised that after the rate expired, IDT would replace it with a market-competitive variable rate. Am. Compl. ¶ 13. Despite this promise, IDT raised customers' rates to above-market prices. Consequently, a customer may have ended up paying two to four times more money for electricity than before he or she switched to IDT. *Id.* ¶ 17. Ferrare, for example, enrolled as an IDT electricity customer in August 2013. *Id.* ¶ 22. Ferrare alleges that from September 2013

---

[2] "PJM is a regional transmission organization, approved by the Federal Energy Regulatory Commission, that operates a competitive wholesale electricity market and coordinates the movement of wholesale electricity in Pennsylvania . . . ." Def.'s Mem. of Law in Support of Mot. to Stay at 11, ECF No. 19-1.

until March 2014, IDT overcharged him by hundreds of dollars above the local utility's rate for electricity. *Id.* ¶¶ 22-24.

Ferrare brings suit on behalf of himself and putative class members, who are "[a]ll persons in the Commonwealth of Pennsylvania who contracted with [IDT] to act as their electric supplier." *Id.* ¶ 26. Ferrare brings three claims against IDT related to IDT's pricing practices: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) declaratory judgment. *See id.* ¶¶ 37-48. Ferrare alleges that IDT failed to charge prices in accordance with its Disclosure Statement. IDT thus failed to uphold its contractual obligation to offer a competitive electricity price keyed to market factors. Ferrare claims that IDT also breached the covenant of good faith and fair dealing because IDT and its customers did not deal on equal terms: IDT customers entrusted IDT to purchase and sell electricity at competitive rates that passed on savings to the customers. Ferrare "seek[s] a declaration of [IDT's] obligations to [him and the putative class members] under the agreement regarding the price of [IDT's] electricity." *Id.* ¶ 48.

### B. Public Utility Commission Proceeding

The PUC is the state regulatory body with authority over EGSs. The Pennsylvania Public Utility Code (the "Code") authorizes the PUC to regulate certain aspects of EGS operations. *See* 66 Pa. C.S.A. § 2809; *id.* § 2802(14). Pursuant to this authority, the PUC promulgated regulations governing, *inter alia*, EGS pricing and billing practices. *See* 52 Pa. Code §§ 54.4(a) (Bill format) ("EGS prices billed must reflect the marketed prices and the agreed upon prices in the disclosure statement."), 54.5(a) (Disclosure statement) ("The agreed upon prices in the disclosure statement must reflect the marketed prices and the billed prices."). The PUC also

regulates EGS terms of service and the variable pricing statement included in a disclosure statement.  *See id.* § 54.5(c).

On June 20, 2014, the Pennsylvania Office of Attorney General and the Pennsylvania Office of Consumer Advocate (collectively, "the Commonwealth") commenced a proceeding against IDT before the PUC (the "PUC Proceeding").[3]  The Commonwealth's PUC complaint relates to the IDT pricing practices implicated in Ferrare's lawsuit.  In August 2014, two Administrative Law Judges ("ALJs") issued an interim order on some of the claims raised in the PUC Proceeding.  *Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*, Pennsylvania Public Utility Commission, C-2014-2427657, 2014 WL 4374209 (Aug. 20, 2014).  IDT and the Commonwealth each petitioned the PUC for interlocutory review of the ALJs' August 2014 order.

On December 18, 2014, the PUC granted both petitions and issued a decision clarifying the ALJs' August 2014 order.  As relevant to the pending Motion to Stay, the PUC determined that because PUC regulations "require that an EGS's billed price reflect its disclosure statement. . . . the [PUC] has jurisdiction and authority to determine whether IDT billed customers in accordance with its Disclosure Statement." *Commonwealth of Pennsylvania, et al. v. IDT Energy, Inc.*, C-2014-2427657, 2014 WL 7339557, at *1 (Dec. 18, 2014) (citing 52 Pa. Code §§ 54.4(a), 54.5(a)).  The PUC also determined that it has "plenary authority" under 66 Pa. C.S.A. § 501 "to direct an EGS to issue a credit or refund for an over bill" because "having the authority to order EGS billing adjustments, including refunds, under the appropriate circumstances, helps ensure that EGSs comply with the Commission's Regulations and bill customers in accordance with their disclosure statement—a fundamental consumer protection

---

[3] The PUC Proceeding docket number is C-2014-2427657 and the full docket may be accessed at http://www.puc.state.pa.us/about_puc/consolidated_case_view.aspx?Docket=C-2014-2427657.

under the Electric Competition Act." *Id.* (citing 66 Pa. C.S.A. § 2802(14)). Finally, the PUC clarified that it lacks "subject matter jurisdiction to interpret the terms and conditions of a contract between an EGS and a customer to determine whether a breach of the contract has occurred."[4] *Id.*

## II. DISCUSSION

IDT moves for a stay of this lawsuit pursuant to the doctrine of primary jurisdiction. The doctrine

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S. Ct. 161 (1956);[5] *see MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1105 (3d Cir. 1995) (internal quotation marks omitted) (explaining that the doctrine "applies where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute"). "Essentially, the doctrine creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence." *Elkin v. Bell Tel. Co. of Pa.*, 491 Pa. 123, 420 A.2d 371, 376 (1980).

---

[4] The PUC also "note[d] that the Commission does not have traditional ratemaking authority over competitive electric generation suppliers and does not regulate competitive supply rates." 2014 WL 7339557, at *1.

[5] The Pennsylvania Supreme Court has cited to *Western Pacific Railroad Co.* and other United States Supreme Court precedent to explain the doctrine of primary jurisdiction. *See Elkin v. Bell Tel. Co. of Pa.*, 491 Pa. 123, 420 A.2d 371, 376 (1980); *Weston v. Reading Co.*, 445 Pa. 182, 282 A.2d 714, 723 (1971).

Despite its name, the doctrine does not implicate the subject matter jurisdiction of a federal court. *See Reiter v. Cooper*, 507 U.S. 258, 268, 113 S. Ct. 1213 (1993) ("Referral of the issue to the administrative agency does not deprive the court of jurisdiction . . . ."); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353, 83 S. Ct. 1715 (1963) (explaining that when the doctrine applies, "[c]ourt jurisdiction is not thereby ousted, but only postponed").

While "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," the Third Circuit has used a four-factor test.[6] *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (internal quotation marks omitted). The factors adopted by the Third Circuit in *Baykeeper* are:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Id.* (internal quotation marks omitted).

In this case, the *Baykeeper* factors weigh in favor of applying the doctrine of primary jurisdiction and granting a stay. The first *Baykeeper* factor "focuses on the competence of the court and the agency to address the matter" and weighs in favor of applying primary jurisdiction. *Id.* Ferrare argues that "[t]he questions at issue relate to a simple breach of contract claim which

---

[6] IDT argues that the *Baykeeper* analysis is inapposite because the case involved a citizen suit based on federal environmental laws that the defendants sought to adjudicate before a state regulatory body. Def.'s Reply Br. at 7 n.5, ECF No. 21. However, the broad holding in *Baykeeper* contained no limiting principle to suggest that the Third Circuit's analysis of the primary jurisdiction doctrine applies only in cases involving federal claims. Moreover, the *Baykeeper* primary jurisdiction analysis approximates the Pennsylvania courts' analysis. *See Elkin*, 420 A.2d at 377 (holding that where a lawsuit implicates a complex matter within an agency's discretion and jurisdiction, and where considerations of "uniformity and consistency" are present, courts should apply the doctrine of primary jurisdiction). Thus, the conclusion would be the same under the Pennsylvania primary jurisdiction analysis.

Additionally, other district courts have applied the *Baykeeper* factors and stayed cases that implicated state law and state regulatory schemes. *See, e.g.*, *Harshbarger v. Pa. Mut. Life Ins. Co.*, No. 12-6172, 2014 WL 1409445 (E.D. Pa. Apr. 11, 2014); *Natixis Fin. Prods., LLC v. Pub. Serv. Elec. & Gas Co.*, No. 13-7076, 2014 WL 1691647 (D.N.J. Apr. 29, 2014).

is within the conventional experience of this Court," but the underlying question is whether IDT complied with PUC regulations that require an EGS to charge prices consistent with its disclosure statement. Pl.'s Opp. at 4, ECF No. 20. This question is also central to Ferrare's declaratory judgment claim, in which he seeks a ruling on IDT's obligations to customers regarding electricity prices. The PUC has the technical expertise to evaluate how IDT calculated the electricity prices it charged customers and whether IDT's method complied with its Disclosure Statement as the regulations require.

For the same reasons, the second *Baykeeper* factor, whether the matter is particularly within the discretion of the agency, also weighs in favor of applying the doctrine of primary jurisdiction.[7] Pursuant to its statutory authority, the PUC promulgated regulations that govern EGS billing and disclosure statement practices. 52 Pa. Code §§ 54.4(a), 54.5(a); *see* 66 Pa. C.S.A. § 2809. For example, the PUC regulations require that "EGS prices billed must reflect the marketed prices and the agreed upon prices in the disclosure statement." 52 Pa. Code § 54.4(a). As the administrative agency authorized to develop and enforce the regulatory framework for EGSs, the PUC has the discretion to evaluate IDT's compliance with its regulations.

The third *Baykeeper* factor evaluates the risk of inconsistent rulings and weighs in favor of applying the doctrine of primary jurisdiction. As discussed above, the issues pending in the PUC Proceeding overlap with the claims raised in this lawsuit. The PUC ruled that it has the

---

[7] Ferrare argues that his lawsuit should proceed simultaneously with the PUC Proceeding because the PUC lacks the authority to determine breach of contract claims and cannot award him the relief he seeks. *See* Pl.'s Opp. at 2; Pl.'s Resp. to Def.'s Notice of Supp. Authority at 1, ECF No. 25. Although the PUC's determination of whether IDT charged prices in accordance with its Disclosure Statement will not dispose of Ferrare's contract and declaratory judgment claims, it will bear on this Court's subsequent rulings. Additionally, the PUC ruled that it has the authority to order an EGS to issue refunds for overcharges. *See* 2014 WL 7339557, at *1. A ruling on refunds might affect a damages calculation in this lawsuit.

7

authority to determine whether IDT charged electricity prices consistent with its Disclosure Statement, and will do so in the PUC Proceeding. The PUC Proceeding is pending; the next hearing is scheduled for September 2015. If this Court denies IDT's Motion to Stay and the lawsuit proceeds, there is a risk of inconsistent rulings because eventually, the Court (or a jury) is likely to rule on the same issue in evaluating Ferrare's claims. Any court or jury determination of this question could conflict with a PUC ruling on the same issue.

The fourth factor, whether application to the agency has already been made, also weighs in favor of applying the doctrine of primary jurisdiction. As Ferrare concedes, a prior application to the PUC was made in June 2014. *See* Pl.'s Opp. at 10. The PUC has accepted the relevant question of IDT's compliance with its Disclosure Statement, and the PUC Proceeding remains pending. Moreover, in April 2015 Ferrare petitioned the PUC to allow him to intervene in the PUC Proceeding on behalf of other IDT customers. *See* Def.'s Notice of Pl.'s Petition to Intervene, ECF No. 30. In May 2015, the PUC granted Ferrare's petition but only allowed him to intervene on his own behalf, rather than as a class representative. *See* Def.'s Notice of Order Granting Pl.'s Petition to Intervene, ECF No. 31. Because the PUC Proceeding is pending, the fourth factor weighs in favor of applying the doctrine of primary jurisdiction.

In sum, the *Baykeeper* factors weigh in favor of applying the primary jurisdiction doctrine and staying this case.

### III. CONCLUSION

For these reasons, I will grant IDT's Motion to Stay and deny its Motion to Dismiss without prejudice. This action will be stayed until the PUC decides whether IDT charged prices consistent with its Disclosure Statement, and if there were any overcharges, whether refunds are necessary.

8

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:   Copies **MAILED** on _____ to: